In the Matter of NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, against SELECT OPERATING CORPORATION, Respondent.

Supreme Court, Special Term, New York County, May 10, 1944.

*Daniel Kornblum,* General Counsel to Labor Relations Board (*William J. Kridel, Oscar Forster* and *William E. Grady, Jr.,* of counsel), for petitioner.

*William Klein, Milton R. Weinberger* and *Saul H. Nack* for respondent.

EDER, J. This is a proceeding under section 707 of article 20 of the Labor Law [the New York State Labor Relations Act], to compel the respondent to comply with an order of the Labor Relations Board made on October 1, 1943, pursuant to section 706 of the Act and for concomitant relief.

The controversy centers about a watchman employed by the respondent at a theatre operated by it, called the Imperial, and who it is claimed by the petitioner was transferred to one of its other playhouses known as the Forrest. The theatre watchmen are known by the designation stage doormen; their duty is to act as watchmen; they are paid a stipulated salary by the respondent. Of their own volition they do errand service for performers and are rewarded by them with tips and are remembered by them at Christmas time with gifts. The tips at the Imperial averaged $10 per week and the Christmas gifts had reached the sum of $100. At the Forrest theatre, a playhouse of lesser grade, the tips and Christmas gifts were inconsequential.

One David C. Eldredge was a stage doorman employed by the respondent; prior to February 16, 1942, he was stationed at the Imperial for seven consecutive years; during that time he acted as watchman though he also rendered the errand service. As has been said, this service was no part of the stage doorman's duties but the practice was apparently common among stage doormen and tolerated by the respondent. Employment as a stage doorman carried no assurance of permanence of tenure; nor did assignment to a particular theatre imply the designation was permanent; concededly, transfers occurred from time to time in the normal course of events.

It appears that in or about January, 1942, a union known as local No. 54 and another known as No. B183, both affiliated with the American Federation of Labor, each sought to unionize the respondent's stage doormen; it is claimed by the petitioner that the respondent favored the doormen aligning themselves with No. B183 and that the respondent through its general manager, one Whittaker, issued a warning that any employee joining local No. 54 would be discharged. It is further claimed that Eldredge nonetheless joined local No. 54 and so informed one Light, the respondent's manager of the Imperial theatre; that within three hours thereafter he was transferred from the Imperial to the Forrest and that this was done as a punishment to cause him to lose the tips and Christmas gifts which would come to him from the errand service at the Imperial. Such discrimination, the petitioner charged, constituted unfair labor practices and a violation of the Act (§ 704, subd. 10).

The Board, after hearings, found that Eldredge's transfer was occasioned by his said union activities and it ordered his retransfer to the Imperial, with a further direction to the respondent to pay him a sum sufficient to make up his loss of tip income and the loss of his Christmas gifts which would within reasonable expectation have come to him had he remained at the Imperial.

The position of the respondent is that the findings of the Board and its decision and order are wholly without evidence, or at least without substantial evidence for support; that they are founded entirely on hearsay evidence beyond the pale of recognition and therefore the action of the Board is without warrant in law and is invalid. Other features are presented but it is the view of this court that it is unnecessary to consider them; that the primary proposition advanced by the respondent, if sound, necessitates the denial of the application and the dismissal of the petition and proceeding; that point will, therefore, be given basic consideration.

The burden of proving a charge against an employer of "unfair labor practices" rests upon the one making it and it must be supported by substantial evidence; if it is so supported the findings of the Board as to the facts are conclusive; otherwise, such findings may be set aside. (*Matter of Stork Restaurant, Inc.* v. *Boland,* 282 N. Y. 256.)

There is no direct or positive evidence by the petitioner that the respondent's general manager, Whittaker, issued any instruction against employees' joining local No. 54 and the petitioner sought to establish it solely by means of hearsay evi-

dence through the testimony of Eldredge, who said that another doorman named Gebhardt, informed him that another employee, one Garrity, told Gebhardt that Whittaker had issued such an order; as to the verity thereof Eldredge knew nothing of his own personal knowledge. Eldredge also testified that when he told Light about his having joined local No. 54 Light replied that he had no right to do so.

There is no direct evidence that Whittaker ever issued the antiunion direction attributed to him by Eldredge, Gebhardt or Garrity, or that Light ever transmitted to Whittaker the state-ment by Eldredge that he had joined local No. 54; indeed, there is direct and positive evidence by the respondent that Light never informed Whittaker of it, and, also, that Whittaker only learned of Eldredge's affiliation with local No. 54 sometime subsequent to his transfer from the Imperial to the Forrest theatre, and then from one Cassar, an official or organizer of local No. 54, who, in the course of a conversation, suggested Eldredge's retransfer to the Imperial. Whittaker unequivocally denied ever having issued such an injunction.

The mere fact that the Board received hearsay evidence to prove that respondent's general manager Whittaker issued said antiunion order does not render its decision and order per se invalid for the Legislature has ordained that the Board in these administrative proceedings shall not be bound by the common-law or statutory rules of evidence (Labor Law, § 706, subd. 2; Workmen's Compensation Law, § 118); hence, hearsay evidence is admissible before the Board and may be considered by it (*New York State Labor Relations Bd.* v. *Shattuck Co.*, 260 App. Div. 315; *Matter of Carroll* v. *Knickerbocker Ice Co.*, 218 N. Y. 435, involving Workmen's Compensation Law). No basic error was committed by the Board in the receipt and consideration of such evidence, but fundamental error was, however, com-mitted by it when its findings were made entirely dependent on such hearsay testimony of Eldredge that such admonition emanated from Whittaker.

The *Carroll* case (*supra*) holds that although the provisions of the act do not declare the probative force of any testimony, notwithstanding the right of the Board to accept any testi-mony that is offered, still in the end there must be a residuum of legal evidence to support the ultimate determination made. The court further held that in order to sustain an ultimate determination the record must disclose some evidence of a sound, competent and recognizedly probative character and that where such determination rests exclusively on hearsay

testimony, without other support, it cannot stand where it is overcome by substantial evidence. In the *Shattuck* case (*supra*) it was held that though the act does not require the exclusion of hearsay evidence in proceedings before the Board, yet it may not make a finding on mere rumor or gossip. In brief, it must rest in substance.

Substantial evidence is the kind of evidence that tends to establish the existence of a fact; of necessity it excludes vague, uncertain or irrelevant matter not carrying the quality of "proof" (*Milford Copper Co.* v. *Ind. Com.*, 61 Utah 37, 39); it likewise rejects "scintilla of evidence" (*Stork* case, 282 N. Y. 256, *supra; Shattuck* case, *supra; Milford* case, *supra*). "Mere uncorroborated hearsay or rumor does not constitute substantial evidence" (*Shattuck* case, 317).

As has been shown, insofar as there has been an attempt by the petitioner to show that Whittaker issued an antiunion direction prior to Eldredge's transfer, it is predicated solely on the mentioned hearsay testimony of Eldredge, which, without more to uphold it, must be held to be insufficient as being unsupported; for, as pointed out in the *Stork* case (*supra*), "A finding is supported by evidence only when the evidence is so substantial that from it an inference of the existence of the fact may be drawn reasonably", and a "mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based." Merely suspicion and rumor have been shown by petitioner, no more.

The petitioner appreciates the difficulty of its position and seeks to meet this defect of proof by claiming that Light, Gebhardt and Garrity occupied the status of supervisory employees, holding positions of strategic importance, and must be regarded as acting for the respondent with authority, so that their statements must be imputed to the respondent as being authorized acts and binding upon it.

The answer to this premise of the petitioner is that there is no evidence to support it, but that, on the contrary, there is positive testimony by Whittaker that these men were ordinary, inconsequential employees, possessed of no supervisory powers and without any authority to engage or discharge employees.

In view of this state of the record and the rulings in the *Carroll* case (218 N. Y. 435, *supra*) and *Shattuck* case (260 App. Div. 315, *supra*), the hearsay evidence of Eldredge, without anything more to sustain it, must be held insufficient and the ultimate findings of the Board, based thereon, that the respondent, through Whittaker, issued said antiunion instruction and

thereby interfered with its employees in their unionization activities, unwarranted and unauthorized.

There remains then, and finally, the incident of Eldredge's transfer from the Imperial to the Forrest Theatre within three hours from the time he informed Light that he had aligned himself with local No. 54. This was much stressed by the petitioner and relied on as circumstantial evidence establishing that the transfer was a retaliatory act; petitioner also leans strongly on the *Stork* case (282 N. Y. 256, *supra*) as justifying the conclusion of the Board that such incident constitutes substantial evidence that Eldredge's transfer was caused by his said union activities; that it is more than an incident; that it is circumstantial evidence.

It is beyond dispute that the evidence to prove the charge of unfair labor practices need not necessarily be direct and may be circumstantial, but even so it must be sufficient to permit a reasonable inference of violation, by the employer, of rights guaranteed to the employee under the act (*Stork* case, *supra*); such an inference cannot rest alone on the fact of transfer since, admittedly, transfers have occurred from time to time in the normal course of the respondent's business. Therefore, in order to justify the inference of violation, such as the petitioner has drawn, the transfer must be shown to be associated with some act of the employer by way of interference with the union activities of the employee.

In the *Stork* case (*supra*) the factual situation was not the same as in the case at bar; it is true that in the *Stork* case there was the coincidence of discharge following promptly the employees joining a particular union, but the court was careful to point out that the evidence established that both manager and proprietor had each personally participated in the unionization activities and had advised and warned the employees against any of them joining the union held in disfavor; there the proof showed direct interference, brought home to the respondent in that case by positive proof; such actual participation by the manager and proprietor, plus the incident of the prompt discharge of employees joining the disfavored union was, in the view of the court, sufficient substantial evidence to authorize a reasonable inference of violation of the statute by the employer.

We have no such situation here for there is no competent evidence of recognizedly probative character, that Whittaker ever issued the antiunion order attributed to him, or any other such direction or that he transferred Eldredge to the Forrest

theatre because of his allegiance to local No. 54 except the hearsay testimony of Eldredge, already alluded to, and which, standing unsupported by other evidence, is insufficient. Does the mentioned circumstance constitute substantial supporting proof? It is the opinion of this court that it does not and that at most it constitutes suspicion only and comes within the rule in the *Stork* case that more than a mere scintilla of evidence is required to justify or support a finding upon which legal rights and obligations are to be based.

Insufficient evidence is, in the eye of the law, no evidence, and an inference is unreasonably drawn unless it is supported by sufficient evidence. (*Matter of Case*, 214 N. Y. 199, 203; *Blum* v. *Fresh Grown Preserve Corp.*, 292 N. Y. 241.)

For the reasons stated, and the authorities referred to, the court has reached the conclusion that the findings, decision and order of the board are without legal support, and, accordingly, the application is denied and the petition and proceedings are dismissed. Settle order.