In the Matter of NEW YORK STATE LABOR RELATIONS BOARD, Petitioner, against CLUB TRANSPORTATION CORP. et al., Respondents.

Supreme Court, Special Term, Westchester County, July 15, 1948.

*William E. Grady, Jr., Philip Feldblum* and *George E. Moehringer* for petitioner.

*William F. Bleakley* and *Louis H. Shereff* for respondents.

*Harry Sacher* and *Bernard Davis* for Transport Workers Union of America, C.I.O., Local 100, *amicus curiæ.*

*Daniel Kornblum* for Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, A. F. of L., Local 1134, *amicus curiæ.*

BAILEY, J. This application is made agreeably with the provisions of section 707 of the Labor Law for the enforcement of an order of the New York State Labor Relations Board dated August 1, 1947.

The law appears to be settled that upon such an application the issues are limited to whether the Labor Board's findings are supported by substantial evidence and whether the order was proper when made.

The order based upon approximately 1,638 pages of testimony, seventy-five findings of fact, eight conclusions of law, and numerous exhibits provides in brief as follows: the respondents cease from requiring a number of employees formerly employed by Suburban Bus Company, Inc., as a condition of employment, to join Transport Workers Union Local 100 of C.I.O. and forego their membership in Amalgamated Association of Street, Electric Railway and Motor Coach Employees of America, A.F.L., Local Division 1134; that respondents offer employment to these employees as members of Amalgamated without subjugation; that respondents make these employees whole by paying them lost wages between May 3, 1945, when the alleged unfair labor practice was committed and the date when employment is offered; that respondents notify seven former employees of Suburban who joined Transport Workers Union they need not continue such union membership; that they make whole said seven employees by paying them for time lost by reason of the alleged unfair labor practice; that respondents carry out certain other provisions incidental to the foregoing.

The penalties thus found by order are very substantial and warrant close scrutiny of the facts developed which prompted the Labor Board in imposing same.

In brief the major facts are as follows: Suburban Bus Company, Inc., and Club Transportation Corporation were two bus companies which operated regular and school buses in the city of Yonkers. It appears that from August of the year 1941 to February of the year 1945, both companies were operated by the same interests. The employees of Suburban were affiliated with Amalgamated and the employees of Club with Transport Workers Union. The companies were operated separately. On February 17, 1945, respondents purchased Club Transportation Corporation and contracted to purchase Suburban Bus Company, Inc. The latter company was experiencing financial difficulties and was about to lose its franchise and discontinue operations. The contract of purchase would allow unsecured creditors to recover approximately 30% of their debts and provided for assumption by the purchaser of secured debts on a 100% basis. This contract was never legally consummated and on March 22, 1945, an involuntary petition in bankruptcy was filed against Suburban Bus Company, Inc., and subsequently respondents

purchased all of the assets of Suburban at a trustee's sale in bankruptcy.

Amalgamated representing employees of Suburban had an employment contract which expired in May, 1944. A dispute had arisen as to wages and hours and the renewal of the contract was deferred and the matter referred to the National War Labor Board for determination. The trial examiner filed a report before the bankruptcy recommending increased wages retroactive to May, 1944, and this report was confirmed by the board after the bankruptcy. The increase applying to retroactive wages amounted to $14,250 or approximately $19,000 for a one-year period. It does not appear that these back wages were ever paid due to the ensuing bankruptcy.

Transport Workers Union representing employees of Club Transportation also had an employment contract which has been renewed each year to the present time. This contract contained a closed shop clause which authorized Club Transportation to require membership in Transport Workers Union as a condition of employment, such membership to be embraced within thirty days.

It further appears that on May 3, 1945, simultaneous with the sale of Suburban assets to Club the former Suburban employees were formally discharged by the trustee in bankruptcy. Club then the owner of Suburban's assets offered employment to these discharged men and in compliance with their closed shop agreement with Transport Workers Union and at the insistence of Transport Workers Union required them to join Transport Workers Union as a condition of employment.

Eight of the Suburban employees signed with Transport Workers Union and became the employees of Club; the rest, approximately thirty-nine refused, and took their troubles to the New York State Labor Board claiming unfair practice under subdivision 5 of section 704 of the Labor Law. This was tried out at length before the Labor Board, which in August of 1947 made the order which is before the court for enforcement. This order is based upon the premise that the employees of Suburban were a proper unit for collective bargaining and that in making the proposition to the employees that they must join Transport Workers Union respondents violated subdivision 5 of section 704 above, notwithstanding that the foregoing section provides that nothing in it shall preclude an employer from making an agreement with a labor organization requiring as a condition of employment membership therein, if such labor organization is the representative of employees as provided in section 705; and

Transport Workers Union at that time was the labor organization representing their employees.

There is indication in the findings of the New York State Labor Relations Board that the major reason for respondents' acting as they did was to avoid the provisions of the order of the War Labor Board as to back wages; but there is no finding of fraud or misconduct on the part of respondents. Furthermore it appears from finding No. 23 that when the report of the examiner of the War Labor Board was filed as to the Suburban employees respondents made a collective bargaining agreement with the employees of Club embodying terms similar to those recommended in the aforesaid report which included retroactive pay provisions for the employees of Club.

The act provides that to enforce such order a petition may be made by the board to the Supreme Court. This petition is, therefore, made which incorporates the order and asks the court to issue its order to secure its enforcement. An answer to the petition is interposed by Club and the individual respondents, denying many of the important allegations of the petition, and alleging among other things that the board was unfair, did not give them opportunities to properly present evidence and was generally favorable to the position of the employees of Suburban in the entire matter and acted accordingly. It is further alleged that they were obligated in taking over the employees which they took as individuals and not as a former body of Suburban, that if they had not insisted that they join Transport Workers Union they would have violated the contract which they in turn have with it, because one of its provisions is that no employees of Club shall belong to a union other than C.I.O.

Section 700, the opening section of article 20 of the Labor Law, known as the New York State Labor Relations Act, states, among other things that it is in the public interest that equality in bargaining be established and maintained between employer and employee. The same section provides that in the interpretation of the act employees shall have full freedom from interference, restraint, or coercion of their employers. The fundamental purpose for the organization of a group of employees as a unit appears to be to permit bargaining with an employer. Employment is therefore a prerequisite and the relationship of employer and employee must exist before a collective bargaining unit may be created or recognized.

The major point at issue here is that Club, as aforesaid is adjudged guilty of an unfair labor practice because when offer-

ing employment to a group of unemployed men, formerly employed by a defunct company, and associated with one labor union, it obliges them to associate themselves with another union with which the potential employer has a closed shop contract. The reputation and the background of the other, namely, the C.I.O., is such that the public, whose status is frequently referred to in the general statute, would not feel that the rights of labor as against the rights of capital or employers, would be seriously imperiled, and if they were, would be ably defended by the labor organization with which they were to affiliate.

It creates a peculiar result to hold that a group has been unfairly treated when out of employment and in order to obtain employment their destinies as workmen and their subsequent relations in the event labor problems or troubles arise, are to be guided by this well-known labor association. It does not appear that employees of Club, in their relations with respondents, have been dissatisfied, and it is difficult to understand how therefore it should be classed as an unfair labor practice to require others to associate themselves with the same organization, particularly in view of the agreement by which Club was obligated. (See *United Baking Co.* v. *Bakery & Confectionery Workers' Union*, 257 App. Div. 501.)

The conclusions of the court are as follows: The bankruptcy adjudication which culminated in the sale of the assets of Suburban to Club on May 3, 1945, and was followed by a discharge of all Suburban employees terminated the employer-employee relationship between Suburban and the Amalgamated employees. This termination of employment disintegrated the employee unit which had been appropriate for bargaining purposes up to that time. Having lost their employer who failed because of financial inability the employees ceased to be a group and became individual unemployed workmen. Under its contract with Transport Workers Union, Club did not violate the provisions of the State Labor Act by suggesting membership in Transport Workers Union to these individuals as a condition to their employment. The continuance as a unit of Suburban employees after their employer vanished and the finding that their employment continued is a mere fiction not founded in fact.

This court may not question the adjudication of bankruptcy by the United States District Court nor the approval of the sale of all of Suburban's assets by the trustee in bankruptcy. Upon such sale Suburban as a going concern ceased to exist. It had no

assets. It had no employees. Suburban had been completely liquidated. The bankruptcy proceeding must be presumed legal and valid until set aside by direct attack in the Federal court. (*Crouse* v. *McVickar,* 207 N. Y. 213; *Madole* v. *Gavin,* 222 App. Div. 698.)

The New York State Labor Relations Board in the exercise of purely administrative functions has no broader power to pierce a judicial determination nor to discard its legal effect in passing upon unfair labor practices. The board states on page 13 of its paginated report that it does not consider it necessary to pass upon the motivation behind the bankruptcy. Bankruptcy being the fact Suburban employees were no longer such with bargaining rights as a unit or with any rights superior to any other unemployed workman.

No authority has been called to the court's attention, nor has independent research disclosed any which requires the court to coalesce a group of men with a union so as to survive liquidation of its employer by bankruptcy and complete unemployment as a result of such bankruptcy. The burden rests upon the board to establish that an unfair labor practice has been committed. (*Matter of Stork Restaurant, Inc.* v. *Boland,* 282 N. Y. 256; *New York State Labor Relations Board* v. *Shattuck Co.,* 260 App. Div. 315.) There is no evidence to substantiate a finding of a continuance of Suburban employees as an appropriate unit after May 3, 1945. In the absence of such unit Club had every right and was obligated under its contract with Transport Workers Union to impose Transport Workers Union membership as a condition of employment. (*Williams* v. *Quill,* 277 N. Y. 1.)

Furthermore, the board has not found that Suburban employees remained as an appropriate unit after June 30, 1945. (Board's finding No. 54.) The order made by the board on August 1, 1947, presupposes that the unit still continues and remains appropriate and if this application were granted would now require Club to offer employment to thirty-nine former Suburban employees and to pay them for lost time from May 3, 1945, to the date employment is offered. Such a direction is not justified in the absence of a finding that these employees now constitute a unit; under the Transport Workers Union contract with Club renewed to the current year the bargaining unit of its employees is Transport Workers Union. In this respect the order exceeds the findings upon which it is based.

The order if enforced would promote industrial conflict, violate the purpose of the Labor Law and stimulate a chaotic and unfair labor situation rather than expunge an unfair labor prac-

tice. It would accomplish a partial decertification of Transport Workers Union and a partial certification of Amalgamated in disregard of section 705 of the Labor Law providing for representative elections to determine appropriate bargaining units. It would require Club to discharge employees in violation of its closed shop contract with Transport Workers Union. In the alternative it would effect a comingling of employees of two separate unions which would produce great confusion.

Under all these circumstances the order is not supported by the evidence and not justified on the record and this application is denied.