■ In the Matter of UTICA CHEESE, INC., Respondent, v J. ROGER BARBER, as Commissioner of the New York State Department of Agriculture and Markets, et al., Appellants.—Appeal from a judgment of the Supreme Court at Special Term, entered September 6, 1979 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, and ordered the Department of Agriculture and Markets to render a decision on petitioner's milk dealer license application within 60 days of the entry and service of the order. On December 11, 1978, Utica Cheese, Inc., made an application pursuant to article 21 of the Agriculture and Markets Law for a milk dealer's license authorizing it to buy milk from producers, and to operate a cheese manufacturing plant at Oriskany, New York, on premises which it had contracted to purchase from LaSaponara Cheese, Inc., which had gone out of business. Emanuele Saputo, the principal stockholder of Utica Cheese, Inc., is a principal and the chief operating officer of Saputo Cheese, Ltd., of Canada and of Produits Caillette, Ltd., of Canada. The other principals of Utica Cheese are his wife, Mierlle Saputo and Antonia Marciano, who is also a principal and an officer of the Canadian companies. In

conjunction with its application, Utica Cheese filed a surety bond in the amount of $750,000 to guarantee payments to farmers who supply milk to Utica Cheese; supplied numerous letters of recommendation from individuals and organizations in both Canada and New York State attesting to the reputation of the Canadian companies, and to the need of the dairy farmers in Oneida and Madison Counties for a milk dealer to sell their raw milk to; submitted plans for renovation of the plant as requested by the department, which plans were approved; submitted sundry records of Saputo Cheese, Ltd., and its related Canadian corporations to the department and the New York State Organized Crime Task Force between February, 1979 and April, 1979, to enable them to investigate newspaper charges that the principals in Utica Cheese had organized crime connections; offered voluntarily to increase the surety bond and make it permanent in furtherance of the public interest in guaranteeing payment to milk suppliers; and offered to operate under a conditional license pending a full and complete investigation by the department of the alleged organized crime connections. On August 1, 1979, the department had not acted upon the application, and petitioner commenced this proceeding pursuant to CPLR article 78 for a judgment directing respondents to immediately act upon the application. Respondents answered the petition, alleging that an investigation in accordance with subdivision 1 of section 16 and subdivisions a and b of section 254 of the Agriculture and Markets Law was undertaken upon receipt of the application to determine whether a hearing should be held to consider denial of the application, pursuant to section 258-c of the Agriculture and Markets Law. Respondents also allege that during the course of the inquiry, information evidenced by a newspaper clipping was received that the president of petitioner was also a principal in a business for which the Governor of Vermont had denied an industrial development loan based upon alleged links with organized crime, and that the department became aware of other news media reports of an alleged connection between Saputo Cheese, Ltd., and Joseph Bonnano, a reputed organized crime figure, from which it was determined that a thorough investigation of petitioner's background was essential. It was further alleged that the department requested the assistance of the Organized Crime Task Force due to the nature of the issues presented and that the investigation was diligently pursued and continues to be so pursued. Affidavits annexed to the answer, however, indicate that the department is waiting for release of information obtained by the Arizona Narcotics Strike Force in a three-year search of Joseph Bonanno's garbage cans and information obtained by the Royal Canadian Mounted Police by means of search warrants, some of which information being also in the possession of the United States Department of Justice, and that access to this information, which is confidential, for use in civil or administrative proceedings will not be accorded until such time as such use will not conflict with possible criminal proceedings. The position of the department is that until the information in the possession of these various law enforcement agencies has been examined, no investigation of petitioner would be complete. The department, however, does not even speculate as to the time when this information may become available. There is no indication that any of the information garnered by these law enforcement agencies has been or is planned to be submitted to a Grand Jury, or other similar body, or even that it is sufficient for that purpose. In short, there is nothing to indicate that such information will be available in the near future. In the meantime, petitioner is required to wait, denied a hearing, and an opportunity for review in the courts. Respondents assert that mandamus is not

available to petitioner, as a matter of law, in that there is no statutory requirement that the commissioner determine license applications within a certain time frame and that the imposition of a deadline upon the commissioner's time to act on the application constitutes an unwarranted interference with his regulatory responsibilities. Section 258-c of the Agriculture and Markets Law provides, in part, as follows: "No license shall be denied to a person not now engaged in business as a milk dealer * * * unless the commissioner finds by a preponderance of the evidence, after due notice and opportunity of hearing to the applicant * * * one or more of the following: (1) that the applicant is not qualified by character or experience or financial responsibility or equipment properly to conduct the proposed business * * *; (2) that the issuance of the license will tend to a destructive competition in a market already adequately served; or (3) that the issuance of the license is not in the public interest". Section 258 provides that a license shall be for a period not exceeding one year, and section 258-c also authorizes the commissioner to decline to renew or to suspend a license already granted upon due notice and opportunity of hearing to the licensee when the commissioner is satisfied by a preponderance of the evidence of the existence of any one of several enumerated reasons, including conviction of a felony; conduct of the business in a manner indicating an intent to deceive or defraud producers or consumers; failure to make payment without reasonable cause for any milk produced, and failure to give a bond or additional bond when required by the commissioner. While respondents assert that there is no statutory requirement that the commissioner determine license applications within a certain time frame, they admit that the commissioner is required to make a determination within a reasonable time under all of the facts and circumstances. There is no doubt that the commissioner has the power and authority to conduct an investigation into an applicant's background and qualifications before reaching a decision on whether to grant a license, or conduct a hearing on the application. This is acknowledged by petitioner. Petitioner, however, contends that a reasonable time to conduct the investigation, and act on the application, is required and the commissioner is unreasonably delaying the action on its application. The commissioner's concern for the milk producers is admirable, but the law provides that any licensed milk dealer may either participate in the milk producers' security fund pursuant to subdivision 3 of section 258-b of the Agriculture and Markets Law, or provide a bond pursuant to subdivision 6 of section 258-b of the Agriculture and Markets Law, thus precluding any possibility of the milk producers being defrauded. The facts herein warranted an investigation by the commissioner, but this investigation has resulted only in speculation and innuendo to the effect that the principals of petitioner are, or may be, involved in organized crime. There is no direct evidence of such involvement. Records have voluntarily been produced. The investigation was commenced in February, 1979, and respondents now contend that they are entitled to continue the investigation, and decline to act on the application until such time as the Department of Justice, the State of Arizona, and the Canadian Mounted Police decide whether or not criminal proceedings are to be brought against one or more individuals, and the possible completion of any such criminal proceedings when confidential information in the possession of those parties may become available to the commissioner. The implication is that such confidential information may involve the principals of petitioner, but there is no clear evidence to that effect. The effect of this is to extend a final determination on petitioner's application for an indefinite period. A determination cannot be withheld for an indefinite period

merely because an investigation is pending *(Matter of Matty's 49th St. Rest. v New York State Liq. Auth.,* 38 AD2d 815; *Matter of Jamesville Grove v Ring,* 36 AD2d 896). "While the court is without authority to circumvent the statutory provisions by directing the issuance of an appropriate permit without the proceedings set forth therein, respondent may not sit on his hands, but must proceed to process petitioner's application in due time" *(Matter of Tutora v Maull,* 44 AD2d 524). The commissioner cannot withhold a determination for an indefinite period merely because he cannot complete his investigation until he receives confidential information from other sources which may or may not be available until some unknown time in the future. Judgment modified, on the law and the facts, without costs, by directing the commissioner to hold a hearing and render a decision, granting or denying petitioner's application, within a reasonable time, but no later than four months after service of the order herein upon the commissioner, and, as so modified, affirmed. Mahoney, P. J., Staley, Jr., and Herlihy, JJ., concur.

Sweeney and Kane, JJ., concur in part and dissent in part in the following memorandum by Kane, J. Kane, J. (concurring in part and dissenting in part): Although we agree with the majority that the instant judgment must be modified, we do not believe it is appropriate to command the commissioner to render a final decision on petitioner's application in four months. In the first place, the practicalities involved in scheduling and completing the hearing process might well demand additional time. Moreover, even if the procedure could be accomplished within such a period, judicial relief to that extent is not presently warranted. Since the commissioner has discretion to issue or to refuse the license sought by petitioner, and since no definite time for the exercise of that discretion has been fixed by law, it follows that mandamus will lie to compel his decision only if a reasonable time to so act has lapsed or is on the verge of expiring. What is reasonable, of course, depends on the nature of the license and the circumstances of the particular case. Here, the record before us contains indications that petitioner, a recently incorporated entity controlled by Canadian citizens, may have links to individuals connected with organized criminal activities which cross State and national boundaries. Conceding that these indications merit an investigation, the majority awards relief to petitioner on the theory that the commissioner will soon use up the allotment of time reasonably needed to fulfill his responsibilities unless action is taken within four months. We cannot subscribe to this view. The majority emphasizes that the commissioner's investigation has failed to generate anything more than speculation and innuendo, and notes that the materials relied on by him may not become available until some uncertain date in the future. True, the commissioner's research has not yet produced definitive results, but the character and timing of the current indications are not entirely without significance. Petitioner's application was submitted in December of 1978 and was completed in February of this year. Newspaper articles referring to actions by the Governor of Vermont involving an enterprise closely associated with petitioner's principals appeared in mid-February of 1979; the search warrant based on an inspection of garbage from the Arizona residence of Joseph Bonanno, Sr., was executed in March of 1979; Emanuele Saputo, petitioner's president, was interviewed as part of the commissioner's inquiry in April of 1979; and the Royal Canadian Mounted Police executed search warrants directed at the offices of Saputo Cheese, Ltd., and the residences of some of petitioner's stockholders on July 26, 1979. The ultimate worth of this information and its relevance to petitioner's application remain to be seen.

Nevertheless, even a cursory examination of the commissioner's suspicions discloses that they are neither stale nor insubstantial. We are not dealing with a dog license or a parade permit, and the tentacles of organized crime, when seeking to penetrate a troubled but legitimate industry, are not likely to be prominently displayed for all to see. Petitioner's interest, a valid one, is to have its application determined in a reasonable period of time. The commissioner's responsibility, equally valid, is to promote the public welfare and to protect milk suppliers engaged in a sensitive business. Petitioner has not initiated production and has not incurred substantial operating expenses. If the allegations which have arisen are true, they should be verified. If not, the producers of milk, who bear risks far beyond the expectation of receiving payment for their deliveries, are entitled to be assured by the commissioner that they will be dealing with an enterprise of good character. A conditional license might satisfy petitioner today, and a bond might secure some of its potential customers tomorrow, but neither device would afford complete satisfaction to either if the final license is denied. The existence of such alternative measures dramatizes petitioner's demand for speedy action, but it does not answer the basic question of whether a reasonable time for making a final decision has been or is about to be exceeded. The limit of reasonableness has not been violated—as the majority implicitly and correctly recognizes—and we are not convinced that the present record enables this court to predict when that point might be reached. Accordingly, while relief in the nature of mandamus should be granted in order to prevent future inaction or abuse, the judgment should do so without reference to any specific time period and without prejudice to an application for further relief.