In the Matter of UTICA CHEESE, INC., Petitioner, v J. ROGER BARBER, as Commissioner of the New York State Department of Agriculture and Markets, et al., Respondents.

Third Department, May 21, 1981

APPEARANCES OF COUNSEL

*Arnold W. Proskin* for petitioner.

*Thomas G. Conway* for respondents.

OPINION OF THE COURT

MIKOLL, J.

Petitioner, Utica Cheese, Inc., a New York State domestic corporation, applied to the respondents in December, 1978 for a milk dealer's license to operate a cheese manufactur-

ing plant in Oriskany, New York, pursuant to article 21 of the Agriculture and Markets Law.

The principal of Utica Cheese, Inc. is Emanuele Saputo, commonly known as Lino Saputo, a Canadian citizen and resident, who is president of petitioner and owner of 99.8% of its stock. Because of the relationship between Lino Saputo and Utica Cheese, Inc., it is not disputed that if the respondents were justified in denying a license to him, they would also be justified in denying a license to the corporation.

After a preliminary conference and investigative hearing concerning the petitioner's application, and some initial legal skirmishes between the parties (see *Matter of Utica Cheese v Barber*, 73 AD2d 726, mod 49 NY2d 1028), an administrative hearing was conducted on the application commencing May 23, 1980. This administrative hearing process ended on July 2, 1980 after a hearing had been held in New York City on one day and in Albany on nine separate days, several of which were for protracted sessions. The hearing transcripts consist of over 2,000 pages and over 80 exhibits, many of them lengthy.

At the hearing, respondents contended that petitioner's application should be denied on four of the grounds listed in section 258-c of the Agriculture and Markets Law. Specifically, they argued that the applicant has not qualified by character to conduct the proposed business, that the applicant failed to furnish statements or information required by the Commissioner of the Department of Agriculture and Markets (the Commissioner), that material statements made in and in support of the application were false or misleading, and that the issuance of the license was not in the public interest.

The essential basis for the above contentions of respondents is that Lino Saputo had sufficient connections with one Joseph Bonanno to disqualify him by reason of character from obtaining a milk dealer's license and that Saputo has attempted to conceal the extent of his connections with Bonanno from respondents. The parties have stipulated that Bonanno is a reputed member of organized crime.

The hearing officer made a number of factual findings and found that "it has been established by a preponderance

of the evidence that Joseph Bonanno has had significant economic and transactional involvement over a substantial period of years with several Canadian cheese companies owned by the members of the Saputo family and by Lino Saputo in particular." Further, the hearing officer also concluded: "The continuing connection between Lino Saputo and the companies with which he is associated and Joseph Bonanno, including payments made to Bonanno, make Lino Saputo unfit for reasons of character, and therefore his corporation, to hold a milk dealer's license. For the same reasons, issuance of the license would not be in the public interest. Moreover, because Lino Saputo has attempted to conceal from the Department his and his companies' involvement with Bonanno, he has failed to furnish all the material information required by the Commissioner, and has made material statements that are false, misleading, and deceitful."

The hearing officer's recommendation was accepted by the Commissioner, who denied petitioner's application.

The instant CPLR article 78 proceeding seeks review and annulment of the Commissioner's determination. Petitioner now contends that the hearing officer relied on the wrong burden of proof, i.e., substantial evidence rather than the correct preponderance of the evidence; that respondents' evidence cannot even meet the lesser standard of substantial evidence because it consists of little more than rank hearsay and speculation; and that the hearing officer did not give proper consideration to the testimony of character witnesses testifying on behalf of petitioner. In addition, petitioner contends that it has fully co-operated with respondents in a refutation of the hearing officer's conclusions that it failed to provide respondents with information or made false and misleading statements to them. Finally, petitioner argues that it would be in the public interest for it to obtain a milk dealer's license in New York State because it would be an asset to New York's dairy industry and respondents did not introduce any evidence that petitioner would in any way harm New York's dairy industry.

The contentions advanced by petitioner are rejected. The

determination should be confirmed. The evidence presented at the hearing was sufficient to sustain, by a preponderance of the evidence, the denial of petitioner's application for a milk dealer's license on each of the grounds found by the hearing officer and adopted by the Commissioner. In view of our finding that respondents have met the preponderance of the evidence standard required by section 258-c of the Agriculture and Markets Law (see *Matter of Tuscan Dairy Farms v Barber*, 45 NY2d 215, app dsmd 439 US 1040), it is unnecessary for us to resolve any lack of clarity in the hearing officer's report occasioned by his apparent attempt to reconcile the burden of proof required by section 306 of the State Administrative Procedure Act (substantial evidence test) with that specified in section 258-c of the Agriculture and Markets Law (preponderance of the evidence test).

Petitioner's contention that the hearing officer's findings are arbitrary and capricious because they are based solely on rank hearsay, speculation and evidence remote in time is without merit.

Pursuant to section 34 of the Agriculture and Markets Law, the hearing officer was not bound by the technical rules of evidence. Hearsay was, therefore, admissible in the proceeding. The question that then arises is whether the "hearsay admitted affected the correctness of the administrative findings or had such a harmful or unfair effect as to vitiate the hearing" *(Matter of Erdman v Ingraham*, 28 AD2d 5, 9). The only questionable and significant hearsay admitted at the hearing regarding the issue of Lino Saputo's character were certain notes in Bonanno's handwriting found in Bonanno's trash at his Tucson, Arizona residence. The admission of these notes did not "vitiate the hearing". A proper foundation was laid for their admission through the testimony of a handwriting expert and the testimony of witnesses which established that Bonanno and his wife alone used the Tucson house. The notes were made by a person with personal knowledge of much of the information recorded. Moreover, they were not accorded excessive reliance by the hearing officer, there was adequate opportunity to challenge their authenticity and content and

there was a failure to refute the notes or to indicate any reason why Bonanno would falsify his own private transitory papers.

The connections found to exist between Saputo and Bonanno by the hearing officer were supported by the evidence and cannot be said to be speculative. The explanations given by Saputo concerning the connections were discounted by the hearing officer. This was well within the province of the hearing officer where, as here, the evidence is conflicting and room for choice exists *(Matter of Collins v Codd*, 38 NY2d 269).

The evidence also demonstrated the existence of a long and varied association between Bonanno and Saputo. Thus, proof of past contacts going back to 1964 was relevant to demonstrate the long-standing quality of the association.

Finally, the hearing officer noted in his findings that petitioner presented several "impressive" character witnesses who testified to the high regard in which several of the witnesses held Saputo and his companies. However, in the exercise of his fact-finding function, he found that such testimony did "not overcome the balance of the evidence establishing the Saputo hidden connection with Bonanno."

The determination should be confirmed, and the petition dismissed, with costs.

SWEENEY, J. P., KANE, MAIN and YESAWICH, JR., JJ., concur.

Determination confirmed, and petition dismissed, with costs.