In the Matter of ROBERT M. ERDMAN, Petitioner, *v.* HOLLIS S. INGRAHAM, as Commissioner of Health of the State of New York, Respondent.

First Department, June 15, 1967.

*Herman Schmertz* of counsel (*Harry A. Gair* with him on the brief; *Gair & Gair,* attorneys), for petitioner.

*Robert E. Hugh* of counsel (*Samuel A. Hirshowitz* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for respondent.

EAGER, J. This article 78 proceeding, transferred to this court, was brought to review a determination of the respondent Commissioner of Health of the State of New York imposing penalties of $100 each upon the petitioner for five violations of the Public Health Law and of the Rules and Regulations on Narcotic Control.

The petitioner, a physician, was charged by the Commissioner with several statutory and rule violations in the matter of prescriptions for and the handling of narcotic drugs. Following a hearing before a hearing officer and upon his findings, conclusions and recommendations, the Commissioner determined, ordered and directed that penalties of $100 be assessed against the petitioner for each of the following violations: (1) violation of subdivision 1 of section 3333 of the Public Health Law in that petitioner did fail to maintain records of all narcotic drugs received and disposed of by him; (2) violation of section 3344 of the Public Health Law in that petitioner did fail to promptly report to the State Department of Health the names and addresses of persons under treatment by him appearing to be habitual users of narcotic drugs; (3) violation of section 3351 (subd. 1, par. [d]) of the Public Health Law in that petitioner did make and utter false prescriptions calling for narcotic drugs in that such prescriptions were not written in the names of persons for whose use the drugs obtained thereby were intended; (4) violation of rule 80.15 of Rules and Regulations on Narcotic Control (10 NYCRR 80.15), in that petitioner did obtain narcotic drugs for his professional use by means other than his official order forms in that such drugs were obtained by the use of prescriptions written in the names of various patients; and (5) violation of rule 80.25 of said Rules and Regulations (10 NYCRR 80.25) in that petitioner did issue prescriptions for narcotic drugs while not being duly licensed so to do.

The attack by petitioner upon the Commissioner's determination rests principally upon the ground that the material findings of fact of the hearing officer, adopted by the Commissioner, are grounded mainly upon hearsay evidence including the written statements of witnesses who were not produced for cross-examination by petitioner.

The case against the petitioner, as presented at the hearing, was based solely upon the testimony of an investigator in the employ of the Department of Health and certain exhibits produced by him. These exhibits included a written case report made by the investigator, a tabulation of prescriptions issued by the petitioner, a written signed statement given by the petitioner to the investigator and sworn statements of certain former

patients of the petitioner and other third persons. These former patients and third persons were not called as witnesses at the hearing, and the petitioner was not afforded the opportunity of cross-examining them. There was a suggestion by the hearing officer that the petitioner was entitled to subpœna these persons and it was noted that subpœnas would be issued to him for this purpose. Petitioner's counsel, however, took the position that he was not obliged to subpœna the witnesses for the purpose of cross-examination.

No one may properly question the right of the hearing officer to receive the written report of the investigator and the written statements taken by him from the third persons. The statute expressly provides that the " written reports of  *  *  *  investigators  *  *  *  and other representatives of state and local health officers on questions of fact pertaining to, concerning or arising under and in connection with complaints, alleged violations, investigations, proceedings  *  *  *  shall be presumptive evidence of the facts so stated therein, and shall be received as such in all courts and places " (Public Health Law, § 10, subd. 2). There is further provision that the Commissioner and hearing officers " shall not be bound by the laws of evidence in the conduct of hearing proceedings " (Public Health Law, § 12-a, subd. 2). Additionally, it is the well-settled general rule that, in conducting a hearing, an administrative tribunal or officer is not bound by the technical rules of evidence followed in a court of law; third person statements and other hearsay evidence may be received and considered by the tribunal or officer (see *Matter of Stammer* v. *Board of Regents,* 287 N. Y. 359; *Matter of Carroll* v. *Knickerbocker Ice Co.,* 218 N. Y. 435; *Matter of Shields* v. *Hults,* 21 A D 2d 745; *Matter of Reynolds* v. *Triborough Bridge & Tunnel Auth.,* 276 App. Div. 388, 390).

The third person statements, taken ex parte by the investigator, although in the form of affidavits, were in the nature of mere hearsay evidence. (See Richardson, Evidence [9th ed.], § 207; *Bookman* v. *Stegman,* 105 N. Y. 621; *Weil* v. *Weil,* 283 App. Div. 33; *Poses* v. *Travelers Ins. Co., Hartford, Conn.,* 245 App. Div. 304; *Jennings* v. *High Farms Corp.,* 35 Misc 2d 80; *Matter of Geiger,* 28 Misc 2d 655.) As hearsay, such statements, standing alone, lack competency and sufficient probative force to sustain material findings or a determination required to be supported by substantial evidence. (See *Edison Co.* v. *Labor Bd.,* 305 U. S. 197, 229, 230; *New York State Labor Relations Bd.* v. *Shattuck Co.,* 260 App. Div. 315, 317; *Willapoint Oysters* v. *Ewing,* 174 F. 2d 676, 690, 691, cert. den. 338 U. S. 860. See, also, Editorial Note, " The Weight to be Given Hearsay Evidence

by Administrative Agencies: The ' Legal Residuum ' Rule '',
26 Brooklyn L. Rev. 265.) Moreover, hearsay evidence may not
be used by an administrative tribunal or officer in such a manner
as to deprive a party of the right to a fair hearing where that
right is guaranteed by law. Such right would be illusory if the
administrative tribunal or officer could ground its determination
on investigatory data and hearsay evidence.

Where, as here, the charges authorized the imposition by the
Commissioner of penal sanctions, the accused was entitled to
a hearing conducted with proper adherence to due process
requirements. There is provision in the statute for the safe-
guards of a formal hearing in these cases (Public Health Law,
§ 12-a). In fact, the Assistant Attorney-General, representing
the Department of Health at the hearing held on these particular
charges, stated at the opening of the hearing that '' this is a
formal hearing, formal in that testimony will be sworn and a
record made. * * * The doctor will be afforded an
opportunity to cross-examine the State's witnesses ''.

While it has been said that the '' hearing held by an adminis-
trative tribunal acting in a judicial or quasi-judicial capacity may
be more or less informal '' (*Matter of Hecht* v. *Monaghan,* 307
N. Y. 461, 470), and it is clear that a hearing by such a tribunal
need not follow the strict requirements of the true judicial hear-
ing, nevertheless, the hearing must be fairly conducted with due
regard for the proper protection of the basic rights of a party.
Although the formalities of a court trial are not required, the
essential due process elements of such a trial must be observed.
(See *Matter of Wignall* v. *Fletcher,* 303 N. Y. 435; *Matter of
Hecht* v. *Monaghan, supra; Matter of Shields* v. *Hults,* 21 A D
2d 745, 746, *supra; Matter of Bender* v. *Board of Regents,* 262
App. Div. 627.)

A reasonable opportunity to test and controvert adverse evi-
dence is an essential element of a fair hearing before an admin-
istrative tribunal or officer. Here, there was express provision
by statute that the accused '' shall have the right * * * to
cross-examine witnesses against him '' (see Public Health Law,
§ 12-a, subd. 4). Also, as aforenoted, at the beginning of the
hearing of the charges against petitioner, the Assistant Attorney-
General stated that the petitioner would '' be afforded an
opportunity to cross-examine the State's witnesses ''.

The right of confrontation with and the opportunity of cross-
examination of witnesses is the traditional means for attacking
adverse testimony offered at any trial or hearing. This is rec-
ognized as the proper means for testing the reliability of such
testimony; and the probative force given to the same by a trier

of the facts should depend upon such a testing. Consequently, it is well settled that a fair hearing on the administrative level requires that a party be given the opportunity of cross-examination of witnesses giving material testimony which may be used against him. (See *Matter of Hecht* v. *Monaghan, supra; Matter of Heaney* v. *McGoldrick,* 286 N. Y. 38; *Matter of Greenebaum* v. *Bingham,* 201 N. Y. 343, 347; *Matter of Busking* v. *Kronimus,* 22 A D 2d 888; *Matter of Shields* v. *Hults, supra; Matter of 245 Elmwood Ave.* v. *New York State Liq. Auth.,* 14 A D 2d 393, affd. 11 N Y 2d 980; *Southern Stevedoring Co.* v. *Voris,* 190 F. 2d 275, 277.)

Furthermore, hearsay evidence received by an administrative tribunal or officer and the consideration and weight given to the same by the tribunal or officer may have a tendency to deprive a party of a fair hearing. Thus, the issue in a given case may be not whether hearsay was properly admitted, but whether the hearsay admitted affected the correctness of the administrative findings or had such a harmful or unfair effect as to vitiate the hearing. (See *Klaw* v. *Schaffer,* 151 F. Supp. 534, 541, affd. on opn. below 251 F. 2d 615, judgment vacated 357 U. S. 346; see, also, *Matter of Cianelli* v. *Department of State,* 16 A D 2d 352, 353.)

Here, the Department of Health, in presenting its case against the petitioner at the hearing, chose to rely in a substantial manner upon the written third person statements, taken ex parte by its investigator, and did not produce the persons as witnesses, thereby depriving the petitioner of the opportunity to cross-examine them. As a consequence, in many instances, the hearing officer referred to the statements as the basis for material findings of fact made by him in support of his conclusions as to the petitioner's guilt, and the Commissioner's determination is expressly stated to be based upon these findings and the conclusions of the hearing officer. Although there is other independent and competent evidence, substantial in nature, to support some of the charges, it is a reasonable assumption, on the basis of the record, that the hearing officer and the Commissioner were materially influenced in their findings and conclusions by the data contained in these third person statements. Under the circumstances, we conclude that the receipt and consideration of the hearsay statements, without the opportunity of cross-examination, had the effect of depriving petitioner of the fair and proper hearing to which he was entitled and that on the law and in the interests of justice, the matter should be remanded to the Commissioner for rehearing.

There remains for consideration the contention of the petitioner that rule 80.25 of the Rules and Regulations on Narcotic Control is invalid and may not serve as the basis for any proper charge against him. The rule is as follows: "80.25. Who may issue. A prescription for narcotic drugs may be issued only by a physician, dentist, veterinarian, or other practitioner duly registered, or an exempt official." (10 NYCRR 80.25.)

The Commissioner's findings and determination were that the petitioner "was not registered for narcotic privileges with the United States Bureau of Internal Revenue and was assigned no narcotic federal registry number" and that "he did issue prescriptions for narcotic drugs while not being duly licensed so to do". (Concededly, however, the petitioner was a duly licensed physician.)

Rule 80.25 does not literally state and may not be construed as requiring the registration with the United States Bureau of Internal Revenue of physicians who issue drug prescriptions. The validity of a rule so providing could be questioned upon the ground that the interests of public health and of this State would not be promoted or furthered by such registration. This State is not properly concerned with the enforcement of the Federal Internal Revenue laws.

The rule, insofar as a violation thereof authorizes the imposition of penal sanctions, must be strictly construed. (See *People* v. *Benc*, 288 N. Y. 318, 323; *Faingnaert* v. *Moss*, 295 N. Y. 18, 22, 23; *People ex rel. Kane* v. *Sloane*, 98 App. Div. 450, 452.) As merely descriptive of those persons who may issue narcotic prescriptions, and with due regard to the punctuation thereof, the rule is not of such definiteness as to support a charge against a duly licensed physician for failure to register with the United States Bureau of Internal Revenue. If the Commissioner intended to subject a physician using narcotic drugs in his professional practice to a penalty for failure to possess a special tax registration (see Public Health Law, § 3301, subd. 12), the rule promulgated by him should expressly so provide in certain terms. Rule 80.25 should not be applied to have this effect.

The determination of the respondent, Commissioner of Health, dated June 10, 1966, imposing five penalties of $100 each against the petitioner for alleged violations of Public Health Law and of Rules and Regulations on Narcotic Control, should be in all respects annulled on the law and on the facts without costs, and the matter remanded to the Commissioner for rehearing and reconsideration in light of this opinion.

STEVENS, J. P., TILZER, RABIN and McGIVERN, JJ., concur.

Determination unanimously annulled on the law and on the facts, without costs or disbursements, and the matter remanded to the Commissioner for rehearing and reconsideration in light of the opinion filed herein.