589 So.2d 1337 (1991)
Milton S. JENNINGS, Appellant,
v.
DADE COUNTY and Larry Schatzman, Appellees.
Nos. 88-1324, 88-1325.
District Court of Appeal of Florida, Third District.
August 6, 1991.
On Rehearing Granted December 17, 1991.
*1339 John G. Fletcher, South Miami, for appellant.
Robert D. Korner and Roland C. Robinson, Miami, Robert A. Ginsburg, County Atty., and Eileen Ball Mehta and Craig H. Coller, Asst. County Attys., for appellees.
Joel V. Lumer, Miami, for The Sierra Club as Amicus Curiae.
Before BARKDULL,[*] NESBITT and FERGUSON, JJ.

ON REHEARING GRANTED
NESBITT, Judge.
The issue we confront is the effect of an ex parte communication upon a decision emanating from a quasi-judicial proceeding of the Dade County Commission. We hold that upon proof that a quasi-judicial officer received an ex parte contact, a presumption arises, pursuant to section 90.304, Florida Statutes (1989), that the contact was prejudicial. The aggrieved party will be entitled to a new and complete hearing before the commission unless the defendant proves that the communication was not, in fact, prejudicial. For the reasons that follow, we quash the order under review with directions.
Respondent Schatzman applied for a variance to permit him to operate a quick oil change business on his property adjacent to that of petitioner Jennings. The Zoning Appeals Board granted Schatzman's request. The county commission upheld the *1340 board's decision. Six days prior to the commission's action, a lobbyist Schatzman employed to assist him in connection with the proceedings registered his identity as required by section 2-11.1(s) of the Dade County Ordinances. Jennings did not attempt to determine the content of any communication between the lobbyist and the commission or otherwise challenge the propriety of any communication prior to or at the hearing.
Following the commission order, Jennings filed an action for declaratory and injunctive relief in circuit court wherein he alleged that Schatzman's lobbyist communicated with some or all of the county commissioners prior to the vote, thus denying Jennings due process both under the United States and Florida constitutions as well as section (A)(8) of the Citizens' Bill of Rights, Dade County Charter. Jennings requested the court to conduct a hearing to establish the truth of the allegations of the complaint and upon a favorable determination then to issue an injunction prohibiting use of the property as allowed by the county. Based upon the identical allegations, Jennings also claimed in the second count of his complaint that Schatzman's use of the permitted variance constituted a nuisance which he requested the court to enjoin. The trial court dismissed Count I of the complaint, against both Dade County and Schatzman. The court gave Jennings leave only against Dade County to amend the complaint and to transfer the matter to the appellate division of the circuit court. The trial court denied Schatzman's motion to dismiss Count II and required him to file an answer. Jennings then timely filed this application for common law certiorari.
We have jurisdiction based on the following analysis. The trial court's order dismissed Jennings' equitable claim of non-record ex parte communications while it simultaneously reserved jurisdiction for Jennings to amend his complaint so as to seek common law certiorari review pursuant to Dade County v. Marca, S.A., 326 So.2d 183 (Fla. 1976). Under Marca, Jennings would be entitled solely to a review of the record as it now exists. However, since the content of ex parte contacts is not part of the existing record, such review would prohibit the ascertainment of the contacts' impact on the commission's determination. This order has the effect then of so radically altering the relief available to Jennings that it is the functional equivalent of requiring him to litigate in a different forum. Thus, Jennings' timely petition activates our common law certiorari jurisdiction because the order sought to be reviewed a) constitutes a departure from the essential requirements of law, and b) requires him to litigate a putative claim in a proceeding that cannot afford him the relief requested and for that reason does not afford him an adequate remedy. See Tantillo v. Miliman, 87 So.2d 413 (Fla. 1956); Norris v. Southern Bell Tel. & Tel. Co., 324 So.2d 108 (Fla. 3d DCA 1960). The same reasoning does not apply against Schatzman. Nonetheless, because we have jurisdiction, there is no impediment to our exercising it over Schatzman as a party.
At the outset of our review of the trial court's dismissal, we note that the quality of due process required in a quasi-judicial hearing is not the same as that to which a party to full judicial hearing is entitled. See Goss v. Lopez, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); Hadley v. Department of Admin., 411 So.2d 184 (Fla. 1982). Quasi-judicial proceedings are not controlled by strict rules of evidence and procedure. See Astore v. Florida Real Estate Comm'n, 374 So.2d 40 (Fla. 3d DCA 1979); Woodham v. Williams, 207 So.2d 320 (Fla. 1st DCA 1968). Nonetheless, certain standards of basic fairness must be adhered to in order to afford due process. See Hadley, 411 So.2d at 184; City of Miami v. Jervis, 139 So.2d 513 (Fla. 3d DCA 1962). Consequently, a quasi-judicial decision based upon the record is not conclusive if minimal standards of due process are denied. See Morgan v. United States, 298 U.S. 468, 480-81, 56 S.Ct. 906, 911-12, 80 L.Ed. 1288 (1936); Western Gillette, Inc. v. Arizona Corp. Comm'n, 121 Ariz. 541, 592 P.2d 375 (Ct.App. 1979). A quasi-judicial hearing generally meets basic due process requirements if the parties are provided notice of the hearing and an opportunity *1341 to be heard. In quasi-judicial zoning proceedings, the parties must be able to present evidence, cross-examine witnesses, and be informed of all the facts upon which the commission acts. Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648, 652 (Fla. 3d DCA 1982).[1]
The reported decisions considering the due process effect of an ex parte communication upon a quasi-judicial decision are conflicting. Some courts hold that an ex parte communication does not deny due process where the substance of the communication was capable of discovery by the complaining party in time to rebut it on the record. See, e.g., Richardson v. Perales, 402 U.S. 389, 410, 91 S.Ct. 1420, 1431-32, 28 L.Ed.2d 842 (1971); United Air Lines, Inc. v. C.A.B., 309 F.2d 238 (D.C. Cir.1962); Jarrott v. Scrivener, 225 F. Supp. 827, 834 (D.D.C. 1964). Other courts focus upon the nature of the ex parte communication and whether it was material to the point that it prejudiced the complaining party and thus resulted in a denial of procedural due process. E.g., Waste Management v. Pollution Control Bd., 175 Ill. App.3d 1023, 125 Ill.Dec. 524, 530 N.E.2d 682 (Ct.App. 1988), appeal denied, 125 Ill.2d 575, 130 Ill.Dec. 490, 537 N.E.2d 819 (1989); Professional Air Traffic Controllers Org. (PATCO) v. Federal Labor Relations Auth., 685 F.2d 547, 564-65 (D.C. Cir.1982); Erdman v. Ingraham, 28 A.D.2d 5, 280 N.Y.S.2d 865, 870 (Ct.App. 1967).
The county adopts the first position and argues that Jennings was not denied due process because he either knew or should have known of an ex parte communication due to the mandatory registration required of lobbyists. The county further contends that Jennings failed to avail himself of section 33-316 of the Dade County Code to subpoena the lobbyist to testify at the hearing so as to detect and refute the content of any ex parte communication. We disagree with the county's position.
Ex parte communications are inherently improper and are anathema to quasi-judicial proceedings. Quasi-judicial officers should avoid all such contacts where they are identifiable. However, we recognize the reality that commissioners are elected officials in which capacity they may unavoidably be the recipients of unsolicited ex parte communications regarding quasi-judicial matters they are to decide. The occurrence of such a communication in a quasi-judicial proceeding does not mandate automatic reversal. Nevertheless, we hold that the allegation of prejudice resulting from ex parte contacts with the decision makers in a quasi-judicial proceeding states a cause of action. E.g., Waste Management; PATCO. Upon the aggrieved party's proof that an ex parte contact occurred, its effect is presumed to be prejudicial unless the defendant proves the contrary by competent evidence. § 90.304. See generally Caldwell v. Division of Retirement, 372 So.2d 438 (Fla. 1979) (for discussion of rebuttable presumption affecting the burden of proof). Because knowledge and evidence of the contact's impact are peculiarly in the hands of the defendant quasi-judicial officer(s), we find such a burden appropriate. See Technicable Video Sys. v. Americable, 479 So.2d 810 (Fla.3d DCA 1985); Allstate Finance Corp. v. Zimmerman, 330 F.2d 740 (5th Cir.1964).
In determining the prejudicial effect of an ex parte communication, the trial court should consider the following criteria which we adopt from PATCO, 685 F.2d at 564-65:
[w]hether, as a result of improper ex parte communications, the agency's decisionmaking process was irrevocably tainted so as to make the ultimate judgment of the agency unfair, either as to an innocent party or to the public interest that the agency was obliged to protect. In making this determination, a number of considerations may be relevant: the gravity of the ex parte communications; whether the contacts may have influenced the agency's ultimate decision; whether the party making the *1342 improper contacts benefited from the agency's ultimate decision; whether the contents of the communications were unknown to opposing parties, who therefore had no opportunity to respond; and whether vacation of the agency's decision and remand for new proceedings would serve a useful purpose. Since the principal concerns of the court are the integrity of the process and the fairness of the result, mechanical rules have little place in a judicial decision whether to vacate a voidable agency proceeding. Instead, any such decision must of necessity be an exercise of equitable discretion.
Accord E & E Hauling, Inc. v. Pollution Control Bd., 116 Ill. App.3d 586, 71 Ill.Dec. 587, 603, 451 N.E.2d 555, 571 (Ct.App. 1983), aff'd, 107 Ill.2d 33, 89 Ill.Dec. 821, 481 N.E.2d 664 (1985).
Accordingly, we hold that the allegation of a prejudicial ex parte communication in a quasi-judicial proceeding before the Dade County Commission will enable a party to maintain an original equitable cause of action to establish its claim. Once established, the offending party will be required to prove an absence of prejudice.[2]
In the present case, Jennings' complaint does not allege that any communication which did occur caused him prejudice. Consequently, we direct that upon remand Jennings shall be afforded an opportunity to amend his complaint. Upon such an amendment, Jennings shall be provided an evidentiary hearing to present his prima facie case that ex parte contacts occurred. Upon such proof, prejudice shall be presumed. The burden will then shift to the respondents to rebut the presumption that prejudice occurred to the claimant. Should the respondents produce enough evidence to dispel the presumption, then it will become the duty of the trial judge to determine the claim in light of all the evidence in the case.[3],[4]
For the foregoing reasons, the application for common law certiorari is granted. The orders of the circuit court are quashed[5] and remanded with directions.
BARKDULL, J., concurs.
FERGUSON, Judge (concurring).
I concur in the result and write separately to address two arguments of the appellees: (1) This court in Coral Reef Nurseries, Inc. v. Babcock Co., 410 So.2d 648 (Fla. 3d DCA 1982), rejected attempts to categorize county commission hearings on district boundary changes as "legislative," while treating hearings on applications for special exceptions or variances as "quasi-judicial"; and (2) the petitioner does not state a cause of action by alleging simply that a lobbyist discussed the case in a private meeting with members of the County Commission prior to the hearing. It is clear from Judge Nesbitt's opinion for the court that neither argument is accepted.

Legislative and Quasi-Judicial Functions Distinct
In support of its argument, that "[t]his Court has previously rejected attempts to categorize county commission hearings on district boundary changes as `legislative', while treating hearings on applications for special exceptions or variances as `quasi-judicial'," Dade County cites Coral Reef Nurseries, Inc. v. Babcock Company, 410 So.2d 648 (Fla. 3d DCA 1982). The argument is made for the purpose of bringing this case within what the respondents describe *1343 as a legislative-function exception to the rule against ex parte communications. Indeed, there is language in the Coral Reef opinion, particularly the dicta that "it is the character of the administrative hearing leading to the action of the administrative body that determines the label" as legislative or quasi-judicial, Coral Reef at 652, which, when read out of context, lends support to Dade County's contentions. As an abstract proposition, the statement is inaccurate.
Whereas the character of an administrative hearing will determine whether the proceeding is quasi-judicial or executive, De Groot v. Sheffield, 95 So.2d 912, 915 (Fla. 1957), it is the nature of the act performed that determines its character as legislative or otherwise. Suburban Medical Center v. Olathe Community Hosp., 226 Kan. 320, 328, 597 P.2d 654, 661 (1979). See also Walgreen Co. v. Polk County, 524 So.2d 1119, 1120 (Fla. 2d DCA 1988) ("The quasi-judicial nature of a proceeding is not altered by mere procedural flaws.").
A judicial inquiry investigates, declares and enforces liabilities as they stand on present facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.
Suburban Medical Center, 597 P.2d at 661 (quoting Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 226, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908)).[1]
It is settled that the enactment and amending of zoning ordinances is a legislative function  by case law, Schauer v. City of Miami Beach, 112 So.2d 838 (Fla. 1959); Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987) (en banc), rev. denied, 529 So.2d 694 (Fla. 1988), by statute, sections 163.3161 and 166.041, Florida Statutes (1989), and by ordinance, Dade County Code § 35-303. See also Anderson, Law of Zoning, § 1.13 (2d Ed. 1976) (zoning is a legislative act representing a legislative judgment as to how land within the city should be utilized and where the lines of demarcation between the several zones should be drawn); 101 C.J.S. Zoning and Land Planning § 1 (1958) (same). It is also fairly settled in this state that the granting of variances,[2] and special exceptions or permits, are quasi-judicial actions.[3]Walgreen Co. v. Polk County, 524 So.2d 1119, 1120 (Fla. 2d DCA 1988); City of New Smyrna Beach v. Barton, 414 So.2d 542 (Fla. 5th DCA) (Cowart, J., concurring *1344 specially), rev. denied, 424 So.2d 760 (Fla. 1982); City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974); Sun Ray Homes, Inc. v. County of Dade, 166 So.2d 827 (Fla. 3d DCA 1964).
A variance contemplates a nonconforming use in order to alleviate an undue burden on the individual property owner caused by the existing zoning. Rezoning contemplates a change in existing zoning rules and regulations within a district, subdivision or other comparatively large area in a given governmental unit. Troup v. Bird, 53 So.2d 717 (Fla. 1951); Mayflower Property, Inc. v. City of Fort Lauderdale, 137 So.2d 849 (Fla. 2d DCA 1962); 101A C.J.S. Zoning and Land Planning § 231 (1979).

Coral Reef Case Clarified
Coral Reef involved a legislative action. The issue before the court was whether there was a showing of substantial and material changes in a 1979 application for a rezoning so that a 1978 denial of an application for the same changes, on the same parcel, by the same applicant, would not be precluded by res judicata principles. It was not necessary to hold the 1978 hearing quasi-judicial in character in order to find that the 1978 resolution had preclusive effect on the 1979 zoning hearing. There is a requirement for procedural fairness in all land use hearings, whether on an application for a boundary change or a variance. Adherence to that constitutional standard, however, does not alter the distinct legal differences between quasi-judicial and legislative proceedings in land use cases.
We clarify Coral Reef, in accordance with its facts, as holding only that legislation denying an application for rezoning has a preclusive effect on a subsequent application for the same rezoning, unless the applicant can show substantial and material changes in circumstances. Treister v. City of Miami, 575 So.2d 218 (Fla. 3d DCA 1991), relying on Coral Reef. An interpretation of Coral Reef as holding that there is no longer a distinction between legislative actions and quasi-judicial actions of a county commission in land use cases goes far beyond the actual holding of the case, and is clearly erroneous. See note 1 supra.
Reliance by the respondents on Izaak Walton League of America v. Monroe County, 448 So.2d 1170 (Fla. 3d DCA 1984), is similarly misplaced. In that case we held that county commissioners, when acting in their legislative capacities, have the right to publicly state their views on pending legislative matters. Izaak Walton League does not address the issue of ex parte communications or prehearing pronouncements in quasi-judicial proceedings.

Lobbying
Jennings argues here that the behind-the-scenes lobbying[4] of the commissioners by Schatzman, for the purpose of influencing the outcome of an appeal from a quasi-judicial proceeding, violated the Citizens' Bill of Rights[5] of the Dade County Charter, as well as the due process provisions of *1345 the United States and Florida Constitutions. We agree, obviously, that the lobbying actions were unlawful. Dade County and Schatzman respond that Jennings is entitled to no relief because he has not alleged and demonstrated a resulting prejudice. In the opinion on rehearing this court now clearly rejects that argument.
Prejudice is to be presumed, without further proof, from the mere fact that any county commissioner granted a private audience to a lobbyist, whose purpose was to solicit the commissioner to vote a certain way in an administrative proceeding for reasons not necessarily addressed solely to the merits of the petition, and that the commissioner did vote accordingly. Starting with the legal definition of lobbying, see note 4 supra, and applying common knowledge as to how the practice works, there is a compelling reason for placing the burden of proving no prejudice on the party responsible for the ex parte communication.
Although an ex parte communication with a quasi-judicial tribunal makes its final action voidable, rather than void per se, the presumption which is drawn from the fact of the improper conduct, is applied to promote a strong social policy and is sufficient evidence to convince the fact-finder that the innocent party has been prejudiced; the rebuttable presumption imposes upon the party against whom it operates the burden of proof concerning the nonexistence of the presumed fact.[6] § 90.304, Fla. Stat. (1991); Department of Agriculture & Consumer Servs. v. Bonanno, 568 So.2d 24, 31-32 (Fla. 1990); Black's Law Dictionary 1349 (4th ed. 1968).
Ex parte lobbying of an administrative body acting quasi-judicially denies the parties a fair, open, and impartial hearing. Suburban Medical Center v. Olathe Community Hosp., 226 Kan. 320, 597 P.2d 654 (1979). Adherence to procedures which insure fairness "is essential not only to the legal validity of the administrative regulation, but also to the maintenance of public confidence in the value and soundness of this important governmental process." Id. 597 P.2d at 662 (citing 2 Am.Jur.2d Administrative Law § 351). The constitutional compulsions which led to the establishment of rules regarding the disqualification of judges apply with equal force to every tribunal exercising judicial or quasi-judicial functions. 1 Am.Jur.2d Administrative Law § 64, at 860 (1962); City of Tallahassee v. Florida Pub. Serv. Comm'n, 441 So.2d 620 (Fla. 1983) (standard used in disqualifying agency head is same standard used in disqualifying judge). See also Rogers v. Friedman, 438 F. Supp. 428 (E.D.Tex. 1977) (rule as to disqualification of judges is same for administrative agencies as it is for courts) (citing K. Davis, Administrative Law § 12.04, at 250 (1972)). Ritter v. Board of Comm'rs of Adams County, 96 Wash.2d 503, 637 P.2d 940 (1981) (same).
NOTES
[*] Judge Barkdull participated in decision only.
[1] It was conceded at oral argument that the hearing before the commission in this case was quasi-judicial.
[2] In such a proceeding, the principles and maxims of equity are applicable. See 22 Fla.Jur.2d Equity §§ 44, et seq. (1980).
[3] In rebutting the presumption of prejudice, respondent may rely on any favorable evidence presented during the claimant's case-in-chief, including that adduced during respondent's cross-examination of claimant's witnesses.
[4] Under the PATCO test adopted, one of the primary concerns is whether the ex parte communication had sufficient impact upon the decision and, therefore, whether the vacation of the agency's decision and remand for a new proceeding would be likely to change the result.
[5] Nothing in this decision shall affect our holding in Izaak Walton League of America v. Monroe County, 448 So.2d 1170 (Fla. 3d DCA 1984) (county commission acting in a legislative capacity).
[1] Relying on Coral Reef, the majority opinion refers to "quasi-judicial zoning proceedings," a confounding phrase which has its genesis in Rinker Materials Corp. v. Dade County, 528 So.2d 904, 906, n. 2 (Fla. 3d DCA 1987). There Dade County argued to this court that the according of "procedural due process" converts a legislative proceeding into a quasi-judicial proceeding, citing Coral Reef. That proposition runs afoul of an entire body of administrative law. If an act is in essence legislative in character, the fact of a notice and a hearing does not transform it into a judicial act. If it would be a legislative act without notice and a hearing, it is still a legislative act with notice and a hearing. See Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150 (1908); Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014 (1894).
[2] A variance is a modification of the zoning ordinance which may be granted when such variance will not be contrary to the public interest and when, owing to conditions peculiar to the property and not the result of the actions of the applicant, a literal enforcement of the ordinance would result in unnecessary and undue hardship. 7 FlaJur2d, Building, Zoning, and Land Controls, § 140 (1978).

The normal function of a variance is to permit a change in "building restrictions or height and density limitations" but not a change in "use classifications". George v. Miami Shores Village, 154 So.2d 729 (Fla. 3d DCA 1963).
[3] An administrative body acts quasi-judicially when it adjudicates private rights of a particular person after a hearing which comports with due process requirements, and makes findings of facts and conclusions of law on the disputed issues. Reviewing courts scrutinize quasi-judicial acts by non-deferential judicial standards. See City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974).

On review of legislative acts, the court makes a deferential inquiry, i.e., is the exercise of discretionary authority "fairly debatable." Southwest Ranches Homeowners Ass'n v. Broward County, 502 So.2d 931 (Fla. 4th DCA), rev. denied, 511 So.2d 999 (Fla. 1987). Further, there is no requirement that a governmental body, acting in its legislative capacity, support its actions with findings of fact and conclusions of law.
[4] "`Lobbying is defined as any personal solicitation of a member of a legislative body during a session thereof, by private interview, or letter or message, or other means and appliances not [necessarily] addressed solely to the judgment, to favor or oppose, or to vote for or against, any bill, resolution, report, or claim pending, or to be introduced ..., by any person ... who is employed for a consideration by a person or corporation interested in the passage or defeat of such bill, resolution, or report, or claim, for the purpose of procuring the passage or defeat thereof." Black's Law Dictionary 1086 (rev. 4th ed. 1968). (Emphasis supplied). The work of lobbying is performed by lobbyists.

A lobbyist is one who makes it a business to "see" members of a legislative body and procure, by persuasion, importunity, or the use of inducements, the passing of bills, public as well as private, which involve gain to the promoters. Id.
[5] Section a(8), Citizens' Bill of Rights, Dade County Charter, provides in pertinent part:

At any zoning or other hearing in which review is exclusively by certiorari, a party or his counsel shall be entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. The decision of any such agency, board, department or authority must be based upon the facts in the record.
[6] PATCO v. Federal Labor Relations Authority, 685 F.2d 547 (D.C. Cir.1982), relied on by Judge Nesbitt, supports this view. There the court was construing section 557(d)(1) of the Administrative Procedure Act, governing ex parte communications. The Act provides, in subsection (C), that a member of the body involved in the decisional process who receives any prohibited communication shall place the contents of the communication on public record. Subsection (D) states that where the communication was knowingly made by a party in violation of this subsection, the party may be required "to show cause why his claim or interest in the proceeding should not be dismissed, denied, disregarded, or otherwise adversely affected on account of such violation." 5 U.S.C.A. § 557(d)(1)(C), (D).