# Third District Court of Appeal

## State of Florida

Opinion filed December 23, 2020.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1195
Lower Tribunal No. 19-167
_____

**Miami-Dade County,**
Petitioner,

vs.

**City of Miami,**
Respondent.

A Writ of Certiorari to the Circuit Court for Miami-Dade County, Appellate Division, Daryl E. Trawick, Lisa S. Walsh, and Angélica D. Zayas, Judges.

Abigail Price-Williams, Miami-Dade County Attorney, and James Edwin Kirtley, Jr. and Dennis A. Kerbel, Assistant County Attorneys, for petitioner.

Victoria Méndez, City Attorney, and Kerri L. McNulty, Senior Appellate Counsel, for respondent.

Before EMAS, C.J., and FERNANDEZ, and HENDON, JJ.

FERNANDEZ, J.

Petitioner Miami-Dade County seeks second-tier certiorari review of a circuit court appellate decision which dismissed the County's petition for writ of certiorari finding that it lacked jurisdiction to review the County's petition. For the reasons that follow, we grant the second-tier certiorari petition and quash the circuit court's opinion.

## I.     BACKGROUND[1]

In 2005, the Coconut Grove Playhouse was designated a historic site, as defined by City of Miami Code, section 23-2. The Miami-Dade County and Florida International University (FIU) are co-tenants of the Playhouse property located at 3500 Main Highway in the City of Miami, Florida 33133. The County and FIU entered into a lease agreement with the State, the owner of the property, in October 2013.

The County was developing a conceptual master plan to rehabilitate the Playhouse, and due to the Playhouse's historic site status, the County was required to apply for an historic preservation permit, known as a certificate of appropriateness, from the City's Historic and Environmental Preservation Board

---

[1] A more extensive discussion of the history of the case, one not necessary to our decision today, may be found in the circuit court appellate division's opinion. See Miami-Dade Cty. v. City of Miami, 28 Fla. L. Weekly Supp. 458a (Fla. 11th Jud. Cir. App. Div. July 22, 2020) (the Playhouse II decision).

2

(HEPB). Section 23-6.2(a) of the City of Miami Code addresses certificates of appropriateness for historic sites and when they are required. Section 23-6.2(b) addresses the procedures for issuing certificates of appropriateness. Specifically, section 23-6.2(b)(4) addresses "Special certificates of appropriateness" such as the one sought by the County in the underlying case, due to it involving "a major addition, alteration, relocation, or demolition." The process requires a public hearing, with notice to the applicant and to any other individual or organization requesting notice, before a decision of the HEPB is made. See City of Miami Code, § 23-6.2(b)(4)a.-b. The County's proposed plan included demolishing the theater, building various new elements, and building a completely new, smaller theater, while retaining the building's historic façade.

On April 4, 2017, the HEPB held a public hearing and conditionally approved the County's application for the certificate of appropriateness. As part of the master plan approval, the County was required to go back to the HEPB when the County had its plans completed to obtain the HEPB's final approval before the County could proceed with the rehabilitation of the Playhouse and before a demolition permit could be issued.

Thereafter, two City of Miami residents objected and appealed the HEPB's decision to the Miami City Commission. The City Commission heard the appeal on December 14, 2017, and after finding that the residents had standing to appeal, the

3

City Commission reversed the HEPB's approval in part, affirmed it in part, and imposed some new conditions on the County's plan. The County filed a timely petition for writ of certiorari in the Eleventh Judicial Circuit's Appellate Division (the circuit court) in case number 18-000032-AP-01 contesting the City Commission's decision. On December 3, 2018, the circuit court granted the County's petition. See Miami-Dade Cty. v. City of Miami, 26 Fla. L. Weekly Supp. 800b (11th Jud. Cir. App. Div. Dec. 3, 2018) (the Playhouse I decision). The circuit court reversed and remanded the case with instructions that the City Commission's decision denying the certificate of appropriateness be quashed. Thus, the HEPB's approval of the County's application for the certificate of appropriateness was reinstated. No party appealed that decision.

Afterwards, the County again submitted its application for a certificate of appropriateness, including an application for a demolition permit, for the final plans to rehabilitate the Playhouse, in order to conform with the HEPB's prior approval in April 2017. The HEPB heard the merits of the County's application at its March 5, 2019 meeting. At the end of the hearing, the HEPB denied the County's application. The County then timely appealed the HEPB's denial to the City Commission. After a public hearing was held on May 8, 2019, the City Commission granted the County's appeal and reversed the HEPB's decision to deny the County's application.

4

The City Commission thus approved the County's final rehabilitation plans for the Playhouse.

On May 17, 2019, the City of Miami Mayor vetoed the City Commission's approval, pursuant to the authority given to him by the City of Miami Charter and Code. The Mayor issued a "veto message" explaining his veto decision. The veto decision was placed on the agenda for the next City Commission meeting on May 23, 2019. At the May 23, 2019 public hearing, one of the Mayor's staff members, "counsel for the mayor," stated, "it is crucial that this [veto] decision has to be guided by quasi-judicial factors." At the end of the hearing, the Commission voted, but the vote did not override the veto, thus leaving the Mayor's veto in place as the final decision on the County's application.

The County then filed its petition for first-tier certiorari review with the circuit court appellate division in case number 2019-167-AP-01, challenging the Mayor's veto. The three-judge panel heard oral argument, and on July 22, 2020, the circuit court issued its opinion. Miami-Dade Cty. v. City of Miami, 28 Fla. L. Weekly Supp. 458a (Fla. 11th Jud. Cir. App. Div. July 22, 2020) (the Playhouse II decision). In the first paragraph of the opinion, the circuit court asked, "Does the circuit court have certiorari jurisdiction to review a municipal mayor's veto?" The circuit court answered "no" to its question and found that the Mayor's veto was not a quasi-judicial act. The circuit court found that the HEPB proceedings were quasi-judicial,

as section 23-6.2 of the City's Code "required notice, the opportunity to be heard, a public hearing, and the right to appeal." Id. It similarly found that the City Commission's decision was quasi-judicial under section 23-6.2(e) of the City Code because the process also required notice, opportunity to be heard, a public hearing, and the right to appeal. Id. However, when addressing the Mayor's veto, the circuit court stated, "Unlike the HEPB decision and the City Commission appeal, a mayoral veto contains no hallmarks of a quasi-judicial act." Id. This was because under the City's Code and Charter, a mayoral veto did not require notice, opportunity to be heard, or an appeal process. Id. The circuit court declined to classify the mayor's veto as executive or quasi-legislative, however it stated that the veto "negates the power of the Commission." Id. at n. 7. Thus, the circuit court stated, "But no matter how veto power is described, it is not quasi-judicial and therefore, not properly reviewable by certiorari." Id. Accordingly, it dismissed the County's petition for lack of jurisdiction. The County then filed this second-tier petition for writ of certiorari for this Court to review the circuit court's decision in Playhouse II.

The County asserts that the circuit court violated the essential requirements of the law by: 1) holding that the Mayor's veto was not a quasi-judicial action, 2) wrongly analogizing the facts of this case to the Florida governor's vetoes of legislative actions at the State level to decide that the Mayor's veto of a quasi-judicial application at the local government level was separate from the quasi-judicial

6

process that the veto overturned, and 3) ignoring the due process implications of how the circuit court interpreted the City's Charter and Code.[2] We agree with the County's positions.

## II.    STANDARD OF REVIEW

Both the County and the City agree that the circuit court's opinion is subject to "second-tier" certiorari review by this Court. We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.030(b)(2)(B) and 9.100(c)(1). In addition, review on second-tier certiorari is limited, as an appellate court can only determine whether the circuit court afforded the petitioner procedural due process and applied the correct law. See Custer Med. Ctr. v. United Auto. Ins. Co., 62 So. 3d 1086, 1092 (Fla. 2010) (quoting Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 530 (Fla. 1995)) ("[W]hen a district court considers a petition for second-tier certiorari review, the 'inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law,' or, as otherwise stated, departed from the essential requirements of law . . . ."); Miami-Dade Cty. v. Omnipoint Holdings, Inc., 863 So. 2d 195, 199 (Fla. 2003); Dusseau v. Metro. Dade Cty. Bd. of Cty. Comm'rs, 794 So. 2d 1270, 1274 (Fla. 2001); Baker v. Metro. Dade

---

[2]We decline to address the County's argument regarding the factual findings on the merits of the underlying case made by the circuit court in its opinion, as they are irrelevant to the jurisdictional analysis before us.

7

Cty., 774 So. 2d 14, 16 (Fla. 3d DCA 2001). Furthermore, a departure from the essential requirements of law is more than a legal error; it is one that results in a "gross miscarriage of justice." Heggs, 658 So. 2d at 527. Moreover, as stated in Terry v. Board of Trustees of City Pension Fund, 854 So. 2d 273, 274 (Fla. 4th DCA 2003), when a circuit court errs by dismissing a first-tier certiorari petition for lack of jurisdiction, second-tier certiorari relief is justified.

## III. DISCUSSION

### A. The circuit court departed from the essential requirements of the law when it held that the Mayor's veto of the City Commission's quasi-judicial decision was not itself quasi-judicial.

Under Florida Rule of Appellate Procedure 9.100(c), quasi-judicial decisions of municipal "agencies, boards, and commissions," are reviewable by petitions for writ of certiorari to the appellate division of the circuit court. Teston v. City of Tampa, 143 So. 2d 473, 476 (Fla. 1962). The Florida Supreme Court in Teston, in addressing the issue of how various administrative decisions are reviewed, stated:

> The initial problem involved in deciding the appropriate method of obtaining relief against administrative action is to look first to the statute under which the administrative agency operates. If a valid method of review is there prescribed it should be followed. In the absence of specific valid statutory appellate procedures to review the particular order, it becomes necessary to ascertain whether the order is quasi-judicial or quasi-legislative. If the order is quasi-judicial, that is, if it has been entered pursuant to a statutory notice and hearing involving quasi-judicial determinations, then it is subject to review by certiorari.

8

Id. at 475-76 (internal citations omitted). Thus, the question before this Court on second-tier certiorari review is whether the circuit court's appellate division departed from the essential requirements of law in deciding that it did not have jurisdiction to review the Mayor's veto because of the circuit court's finding that the Mayor's veto was not a quasi-judicial act. We conclude that the circuit court departed from the essential requirements of law in dismissing the action for lack of jurisdiction and holding that the Mayor's veto of the Commission's quasi-judicial decision was not itself a quasi-judicial decision.

1. **The circuit court did not apply the correct law when it considered the Mayor's veto separate and apart from the entire quasi-judicial proceedings.**

Generally, "legislative action results in the formulation of a general rule of policy, whereas judicial action results in the application of a general rule of policy." Board of Cty. Comm'rs of Brevard Cty. v. Snyder, 627 So. 2d 469, 474 (Fla. 1993). In D.R. Horton, Inc.—Jacksonville v. Peyton, 959 So. 2d 390, 398-99 (Fla. 1st DCA 2007), the First District Court of Appeal cited to Snyder and stated that the Florida Supreme Court listed four characteristics of a quasi-judicial decision:

> (1) quasi-judicial action results in the application of a general rule of policy, whereas legislative action formulates policy;
> (2) a quasi-judicial decision has an impact on a limited number of persons or property owners and on identifiable parties and interests, while a legislative action is open-ended and affects a broad class of individuals or situations;

(3) a quasi-judicial decision is contingent on facts arrived at from distinct alternatives presented at a hearing, while a legislative action requires no basis in fact finding at a hearing; and

(4) a 'quasi-judicial act determines the rules of law applicable, and the rights affected by them, in relation to past transactions,' while a legislative act prescribes what the rule or requirement shall be with respect to future acts.

D.R. Horton, Inc., 959 So. 2d at 398-99 (citing to Snyder, 627 So. 2d at 474). Moreover, in categorizing a governmental function, the focus should be on the nature of the proceedings. It is the character of a hearing which determines whether or not county or municipal action is legislative or quasi-judicial, pursuant to Board of County Commissioners of Brevard County v. Snyder, 627 So. 2d 469, 474 (Fla.1993). See also Fla. Motor Lines v. Railroad Comm'rs, 129 So. 876, 881 (Fla. 1930) ("The essential nature and effect of the governmental function to be performed, rather than the name given to the function or to the officer who performs it, should be considered in determining whether [the action] . . . is legislative, executive, or judicial in its nature, so that it may be exercised by appropriate officers of the proper department.").

In addition, in determining whether an act is quasi-judicial or not, Florida courts have "examine[d] the underlying statute to determine if it [has] any requirement of a quasi-judicial hearing . . . ." Volusia Cty. v. City of Daytona Beach, 420 So. 2d 606, 609 (Fla. 5th DCA 1982) (citing to Bay National Bank and Trust

Co. v. Dickinson, 229 So. 2d 302 (Fla. 1st DCA 1969)). Section 23-6.2(b)(4)(a) of

the City of Miami Code states, in pertinent part:

> a. *Public hearing.* When a complete application is received, the preservation officer shall place the application on the next regularly scheduled meeting of the board. The board shall hold a public hearing to review the application. All public hearings on all certificates of appropriateness conducted by the board and hearings on appeals of board decisions to the city commission regarding certificates of appropriateness shall be noticed as follows:
> 1. The applicant shall be notified by mail at least ten calendar days prior to the hearing.
> 2. Any individual or organization requesting such notification and paying any established fees therefore shall be notified by mail at least ten calendar days prior to the hearing.
> 3. An advertisement shall be placed in a newspaper at least ten calendar days prior to the hearing.
> 4. Any additional notice deemed appropriate by the board.

Moreover, as the Florida Supreme Court stated in De Groot v. Sheffield, 95 So. 2d

912, 915 (Fla. 1957):

> [W]hen notice and a hearing are required and the judgment of the board is contingent on the showing made at the hearing, then its judgment becomes judicial or quasi-judicial as distinguished from being purely executive.

See also Anoll v. Pomerance, 363 So. 2d 329, 331 (Fla. 1978) ("[A] judgment

becomes judicial or quasi-judicial, as distinguished from executive, when notice and

hearing are required and the judgment of the board is contingent on the showing

made at the hearing."). Further, the Florida Supreme Court in West Flagler

<u>Amusement Company v. State Racing Commission</u>, 165 So. 64, 65 (Fla. 1935),

stated:

> A judicial or quasi-judicial act determines the rules of law applicable, and the rights affected by them, in relation to past transactions. On the other hand, a quasi-legislative or administrative order prescribes what the rule or requirement of administratively determined duty shall be with respect to transactions to be executed in the future, in order that same shall be considered lawful. But even so, quasi-legislative and quasi-executive orders, after they have already been entered, may have a quasi-judicial attribute if capable of being arrived at and provided by law to be declared by the administrative agency only after express statutory notice, hearing and consideration of evidence to be adduced as a basis for the making thereof.

<u>Id.</u>

Turning to the City of Miami Code, section 23-6.2(e) states, in pertinent part:

(e) *Appeals.* The applicant, the planning department, or any aggrieved party may appeal to the city commission any decision of the board on matters relating to designations and certificates of appropriateness by filing within fifteen (15) calendar days after the date of the decision a written notice of appeal with the hearing boards department, with a copy to the preservation officer. The notice of appeal shall set forth concisely the decision appealed from and the reasons or grounds for the appeal. Each appeal shall be accompanied by a fee of $525.00, plus $3.50 per mailed notice required pursuant to 23-4. The city commission shall hear and consider all facts material to the appeal and render a decision as promptly as possible. The appeal shall be de novo hearing and the city commission may consider new evidence or materials. The city commission may affirm, modify, or reverse the board's decision. The decision of the city commission shall constitute final administrative review, and no petition for rehearing or reconsideration shall be considered by the city. Appeals from decisions of the city commission may be made to the courts as provided by the Florida Rules of Appellate Procedure.

Accordingly, the decision of the HEPB in denying the County's certificate of appropriateness was a quasi-judicial decision. Also, the hearings held on May 8, 2019 and May 23, 2019 by the City Commission were also quasi-judicial hearings. The circuit court in Playhouse II acknowledged this.

However, the City contends that, in contrast, the Mayor's veto is not a quasi-judicial action as indicated under Florida law. The Mayor's powers are detailed in sections 4(b) and 4(g) of the City of Miami Charter. According to section 4(g)(5), "Powers and duties of mayor.":

> The mayor shall, within ten days of final adoption by the city commission, have veto authority over any legislative, quasi-judicial, zoning, master plan or land use decision of the city commission . . . . The city commission may, at its next regularly scheduled or special meeting after the veto occurs, override that veto by a four-fifths vote of the city commissioners present, notwithstanding any provisions to the contrary contained in the Charter and city code. . . .

Additionally, under the City of Miami Code, section 2-36, "Mayoral veto and commission override," provides that the "veto provisions of Section 4(g)(5) of the City Charter shall be exercised exclusively in accordance with the terms and conditions herein." Section 2-36 of the City Code also provides the requirements for the timing of the Mayor's veto, as well as the format in which the veto and veto message should be provided. The City points out that "absent from this process, however, is any required notice or opportunity to be heard (through either public hearing or written submissions) on the mayoral veto." In addition, the City contends

13

that section 2-36(5) of the City Code explains the process for the City Commission to override the mayoral veto. Section 2-36(5) states:

> Notwithstanding any other rule of the commission, items vetoed by the mayor shall not be subject to the "5 day rule" as provided in section 2-33; not be deferred to a future meeting; not require committee review; not be subject to a motion to reconsider, except at the same meeting; not require first reading; not require publication or additional public hearings; or not be amended if the item required special publication or a public hearing to be originally adopted or enacted. Members of the public shall have a reasonable opportunity to speak on vetoed items consistent with F.S. § 286.0114, and subsection 2-33(c)(2) of the City Code.

Thus, the City argues that because no notice or hearing are required to consider a mayoral veto or a Commission override, the mayoral veto is not quasi-judicial, but is instead, executive. Although the circuit court declined to label the Mayor's veto in this case as an executive action, it agreed with the City in Playhouse II when it stated that the Mayoral veto had no hallmarks of a quasi-judicial act; namely, it did not require notice, opportunity to be heard, nor a public meeting. The circuit court stated there was also no avenue for review of the Mayor's veto. However, this was not accurate, as the City Code provides somewhat of a review mechanism by giving the City Commission override power over the Mayor's veto.

Although we agree with the City that its Code provides notice and hearing procedures for certificate of appropriateness applications before the HEPB and the Commission and that the Code does not contain these procedures for the Mayor's veto, we disagree that the focus on these hallmarks alone turns the Mayor's veto into

14

an executive or quasi-legislative action. We conclude that the Mayor's veto is inextricably intertwined with the quasi-judicial proceedings, as his action was in response to a quasi-judicial proceeding. Thus, it was reviewable by the circuit court's appellate division, and the circuit court had jurisdiction to address the merits of the County's petition.

As both parties agree, the nature of the City's process before the City Commission was quasi-judicial. The County's application for a certificate of appropriateness to rehabilitate the historic Playhouse impacted "limited number of persons or property owners," which here was the County and FIU because they were the parties attempting to rehabilitate the Playhouse. As per the City Code, the decisions taken by the HEPB and the City Commission on the County's application could only be taken after the required notice, opportunity to be heard, and a public hearing was afforded. Accordingly, the process before the HEPB was quasi-judicial in nature. Bloomfield v. Mayo, 119 So. 2d 417, 421 (Fla. 1st DCA 1960) ("[T]he test of a quasi-judicial function turns on whether or not the statutory tribunal had exercised a statutory power given it to make a decision having a judicial character or attribute, and consequent upon some notice or hearing to be had before it as a condition for the rendition of the particular decision made."). See also Lee Cty. v. Sunbelt Equities, II, Ltd. P'ship, 619 So. 2d 996, 1000 (Fla. 2d DCA 1993) ("[I]t is the character of the administrative hearing leading to the action of the administrative

15

body that determines the label to be attached to the action….") (citing <u>Coral Reef</u>

<u>Nurseries, Inc. v. Babcock Co.</u>, 410 So. 2d 648, 652 (Fla. 3d DCA 1982)).

As the County contends, the nature of that process did not suddenly change when the Mayor made his veto decision on the City Commission's approval decision. We agree with the County that the Mayor became a part of that quasi-judicial process because his part in the proceedings was inextricably intertwined with the process that took place before the City Commission. The First District Court of Appeal stated in <u>Bloomfield</u>:

> Where an order of an administrative board or commission is purely administrative or quasi-legislative or quasi-executive in character and quality, such an order is not capable of being reached or affected by the writ of certiorari **unless, as an incident to the arriving at or making of such order by the promulgating authority, a notice and hearing, judicial in nature, is required by law to be observed as a condition precedent** to the commission's or board's exercise of the administrative, quasi-legislative or quasi-executive power comprehended in the terms of the order it attempts to enunciate. Even so, an administrative, quasi-legislative or quasi-executive order, after it has already been entered, may have a quasi-judicial attribute if capable of being arrived at and provided by law to be declared by the administrative agency after express statutory notice, hearing and consideration of the evidence to be adduced as a basis for the making thereof.

<u>Id.</u> at 421 (emphasis added). This is exactly the situation before us. Here, the circuit court did not look at the basic nature of the proceedings as a whole, but rather excised the Mayoral veto portion of the quasi-judicial proceedings and found that because the City's Code and Charter did not require that the Mayor himself provide notice

and hold a public hearing before his veto of the City Commission's quasi-judicial decision, his action could not be quasi-judicial. However, we find that the veto of a quasi-judicial decision is still part of a quasi-judicial proceeding. Importantly, a member of the Mayor's staff, Eddy Leal (counsel for the Mayor, as the Mayor and Leal identified himself at the hearing), recognized the quasi-judicial nature of the Mayor's veto, when he stated at the May 23, 2019 City Commission meeting that "it is crucial that this decision [the Mayor's veto] has to be guided by quasi-judicial factors."

And finally, we find that under the four-factor analysis for characterizing quasi-judicial actions under Snyder and D.R. Horton, the mayor's veto was a quasi-judicial decision. First, the mayor's veto did not adopt a rule or ordinance of general application. Rather, it was an interpretation of existing rules to the County's application in order to decide whether the certificate of appropriateness should be granted. Second, the Mayor's veto had an impact on a limited number of parties, as the County and FIU were co-tenants of the Playhouse. Third, the decision of the HEPB and the City Commission on the County's application was based on the facts resulting from the public hearings as to the master plan and proposed alternatives to the master plan. The Mayor's veto, in turn, was based on this information, as well. According to section 2-36(2) of the City Code, his veto had to "indicate with specificity the reason(s) for the veto." And finally, as a quasi-judicial act, the

17

mayor's veto did not prescribe what the requirement would be for future acts. The Mayor was looking back and determining whether the City Commission had correctly applied the existing rules of law to the County's application. See D.R. Horton, Inc., 959 So. 2d at 398-99 (citing to Snyder, 627 So. 2d at 474).

Consequently, it was error for the circuit court to examine the City Code and Charter in isolation.  The proceedings below in question resulted in quasi-judicial actions, as the Mayor's veto was inextricably intertwined with the quasi-judicial process before the City Commission. Thus, in excising the Mayor's veto from the quasi-judicial proceedings of which the veto was a part of, the circuit court departed from the essential requirements of the law. Accordingly, the circuit court had jurisdiction to review the County's petition for certiorari.

2. **The circuit court's reliance on the Governor of Florida's veto power over actions of the Florida Legislature as an analogy to the Mayor's veto power is misplaced because the cases the circuit court relies on concern the veto of legislative, not quasi-judicial actions.**

In its opinion, the circuit court compares the Mayor's veto power to the State of Florida governor's veto power. This was error. Article II section 3, of the Florida Constitution provides the separation of powers between the three branches of state government: legislative, executive, and judicial. As the Florida Supreme Court held in Locke v. Hawkes, 595 So. 2d 32, 36 (Fla. 1992), the separation of powers provision in Article II, section 3, of the Florida Constitution "was not intended to

18

apply to local governmental entities and officials . . . ." And as the County correctly states, the Florida State Legislature does not perform quasi-judicial actions. Article V, section 1, of the Florida Constitution determines which bodies have quasi-judicial powers: "Commissions established by law, or administrative officers or bodies may be granted quasi-judicial power in matters connected with the functions of their offices."

Moreover, the cases cited by the circuit court are inapplicable, as they do not involve a commission, administrative officer, or bodies' quasi-judicial decisions. In the first case cited in the circuit court's opinion, Brown v. Firestone, 382 So. 2d 654, 664 (Fla. 1980), petitioners filed a petition for writ of mandamus questioning the constitutional validity of various vetoes by the Florida governor of General Appropriations Act of 1979. Id. at 657. In the second case cited by the circuit court in its opinion, Chiles v. Children A, B, C, D, E, & F, etc., 589 So. 2d 260, 265 (Fla. 1991), six foster children in Florida sought declaratory and injunctive relief against Florida's governor, secretary of state, Attorney General, Comptroller, Treasurer, Commissioner of Agriculture, and Commissioner of Education related to the 1991-92 state budget passed by the legislature after the governor determined a budget shortfall and directed state agencies to reduce their current operating budgets. The issue before the Court was "whether the legislature, in passing section 216.221, violated the doctrine of separation of powers by assigning to the executive branch

the broad discretionary authority to reapportion the state budget." Id. at 263. Consequently, because the cases cited by the circuit court are inapposite to the set of facts before us, the circuit court applied the wrong law in relying on these cases to support its dismissal for lack of jurisdiction.

**B. The circuit court's finding that the Mayor's veto was not quasi-judicial results in a miscarriage of justice because it renders the Mayor's veto unreviewable, thus violating the County's due process rights.**

The County contends that by dismissing its petition on first-tier certiorari review, the circuit court violated the County's due process rights. It argues that because the Mayor's veto that was permitted by the City's Charter and Code with respect to a quasi-judicial proceeding is inextricably intertwined with the nature of those quasi-judicial proceedings, the Mayor's veto was thus reviewable by the circuit court. As the County contends, to conclude otherwise would constitute a violation of due process. We agree because the circuit court's opinion demonstrates that the County's due process rights were denied, and this is the miscarriage of justice.

First, we note that the City urges us to deny the petition, arguing that the County's position is an impermissible attempt to assert that the mayoral veto outlined in the City Charter and Code is unconstitutional and that this determination is not within this Court's limited jurisdiction on second-tier certiorari review, citing to Miami–Dade County v. Omnipoint Holdings, Inc., 863 So.2d 195, 199 (Fla. 2003). We disagree with the City because we are not concluding that the City's Code

20

or Charter are unconstitutional, nor are we addressing the constitutionality of the City's Code with respect to the Mayoral veto powers. What the County is arguing is that the Mayor's veto must comply with the constitutional requirements for quasi-judicial proceedings. It is not challenging the constitutionality of the mayor's veto over the quasi-judicial proceedings. Thus, we are not addressing the constitutionality of the City Charter and Code provisions in order to decide whether the circuit court lacked jurisdiction to address the County's petition, as we are aware this is something this Court cannot do on second-tier certiorari review.

Next, we recognize that "the quality of due process required in a quasi-judicial hearing is not the same as that to which a party to full judicial hearing is entitled." Jennings v. Dade Cnty., 589 So. 2d 1337, 1340 (Fla. 3d DCA 1991). However, this Court in Jennings further stated:

> Quasi-judicial proceedings are not controlled by strict rules of evidence and procedure. Nonetheless, certain standards of basic fairness must be adhered to in order to afford due process. Consequently, a quasi-judicial decision based upon the record is not conclusive if minimal standards of due process are denied. A quasi-judicial hearing generally meets basic due process requirements if the parties are provided notice of the hearing and an opportunity to be heard. In quasi-judicial zoning proceedings, the parties must be able to present evidence, cross-examine witnesses, and be informed of all the facts upon which the commission acts.

Id. (international citations omitted). Improperly dismissing a petition for writ of certiorari at the first-tier level warrants second-tier certiorari relief by the district

21

court of appeal. See Terry v. Bd. Of Trustees of City Pension Fund, 854 So. 2d 273 (Fla. 4th DCA 2003); Kahana v. City of Tampa, 683 So. 2d 618 (Fla. 2d DCA 1996). As this Court in Jennings further held, "certain standards of basic fairness must be adhered to in order to afford due process." Jennings, 589 So. 2d at 1340. In addition, "[a]n impartial decision maker is a basic constituent of minimum due process." Ridgewood Properites, Inc. v. Dep't of Cmty. Affairs, 562 So. 2d 322, 323-24 (Fla. 1990), quoting Megill v. Board of Regents, 541 F. 2d 1073, 1079 (5th Cir.1976). Also, the quasi-judicial decision has to be based on evidence submitted at the hearing, and the administrative officers, boards, or commissions cannot base their decision on their own information. Thorn v. Fla. Real Estate Comm'n, 146 So. 2d 907, 910 (Fla. 2d DCA 1962). Accordingly, the Mayor's veto, as it was part of the quasi-judicial proceedings, was also required to comply with these same minimum due process requirements that the City Commission's decision had to abide by. If the circuit court's decision remains, then, as the County contends, only parties who receive a quasi-judicial decision from a local government board will be afforded their due process rights. Parties that receive their decision from a mayoral veto, such as the County in the case before us, will not have a form of review, thus, no due process. The mayor's veto of a quasi-judicial decision is inextricably intertwined with that decision, and it may not be used as a conduit to deprive parties of due process. The circuit court's dismissal of the County's petition resulted in a

miscarriage of justice, as the County no longer has an avenue for review. See Jennings, 589 So. 2d at 1340; Kahana, 683 So. 2d at 619.

## IV.  CONCLUSION

In sum, in not applying the correct law and in not affording the County procedural due process when it dismissed the County's petition for lack of jurisdiction, we find that the circuit court departed from the essential requirements of the law. See Ivey v. Allstate Ins. Co., 774 So. 2d 679, 682 (Fla. 2000) (citing Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 528 (Fla. 1995)). We thus grant the County's petition for writ of certiorari, issue the writ, and quash the circuit court's July 22, 2020 opinion. We further remand the case to the circuit court's appellate division with directions for it to reinstate the County's petition for writ of certiorari and for further proceedings consistent with this opinion.

Writ granted, decision quashed, and cause remanded.